OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Whitten, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State ex rel. Mercy Hospital Anderson, Appellee, v.
Industrial Commission of Ohio; Ellis, Appellant.
[Cite as State ex rel. Mercy Hosp. Anderson v. Indus. Comm.
(1993),      Ohio St.3d      .]
Workers' compensation -- Commission abuses its discretion when
     it orders surgical payment after claimant failed to secure
     commission's pre-approval for the surgery -- Former R.C.
     4121.44, applied.
     (No. 92-1500 -- Submitted March 9, 1993 -- Decided May 19,
1993.)
     Appeal from the Court of Appeals for Franklin County, No.
91AP-614.
     Claimant-appellant, Nina Nash Ellis, injured her low back
in 1982 while in the course of and arising from her employment
with appellee, Mercy Hospital Anderson, her self-insured
employer.  Claimant underwent back surgery in December 1982 and
June 1983, and returned to work after each operation.
     In 1984, claimant moved to Florida and for the next four
years had conservative medical treatment.  In September 1988,
claimant consulted with Dr. Manuel Gonzalez.  He, in turn,
referred her to Dr. Alexander Brodsky of Houston.  Dr. Brodsky
met with claimant on October 17, 1988 and approximately two
weeks later performed back surgery.  Claimant concedes she did
not advise appellee-employer, the Bureau of Workers'
Compensation, or the Industrial Commission of the impending
surgery.
     In July 1989, claimant revisited Dr. Gonzalez because of
continuing back pain.  Among other alternatives, they discussed
the possibility of removing the spinal rods inserted during the
earlier operation.  Dr. Gonzalez then sent claimant home,
telling her to return in three months for re-evaluation.
     Claimant returned on September 18, 1989.  At that time,
Dr. Gonzalez related that "[t]he patient wishes to have the
removal of the battery and Orthopaedic hardware arranged as
soon as possible."  Soon thereafter, claimant submitted to the
commission two C85A claim reactivation forms.  Collectively,
the forms sought payment of all bills related to Dr. Brodsky's
surgery and authorization of Dr. Gonzalez's proposed

operation.  However, rather than wait for adjudication of the C85A's, claimant simply went ahead with the second operation.

Commission staff hearing officers ultimately ordered payment, citing the district hearing officer's order which cited Doctors Brodsky and Gonzalez.  Appellee filed a complaint in mandamus in the Court of Appeals for Franklin County, claiming that the commission abused its discretion in ordering surgical payment, given claimant's failure to secure the commission's pre-approval.  The court of appeals agreed and granted a limited writ ordering the commission to vacate its payment order.

This cause is now before this court upon an appeal as of right.

Vorys, Sater, Seymour & Pease and Arthur E. Phelps, Jr., for appellee.

Harris, Bella & Burgin and Mark L. Newman, for appellant.

Per Curiam.  Former R.C. 4121.44(A) provided:

"The administrator of workers' compensation shall adopt rules to ensure that the following requirements are met with respect to any payments made to health care providers for a claim pursuant to Chapter 4123. of the Revised Code:

"(A) Require prior authorization as a condition of the payment for hospitalization * * * except in the case of emergencies or for good cause shown."

Pursuant to that directive, Ohio Adm. Code 4121-17-24 was promulgated.  Section (C) of that regulation states:

"Surgical procedures and hospitalization.

"Except in emergencies or where the condition of the worker who sustained an industrial injury or occupational disease could be endangered by delay, written authorization from the bureau of workers' compensation must be obtained in advance of all surgical procedures and/or hospitalization." (Emphasis added.)

The validity of these regulations was upheld in State ex rel. Cuyahoga Cty. Hosp. v. Bur. of Workers' Comp. (1986), 27 Ohio St.3d 25, 27 OBR 442, 500 N.E.2d 1370.

Two surgeries are at issue - - Dr. Brodsky's October 1988 fusion and rod insertion and Dr. Gonzalez's October 1989 rod removal.  Claimant-appellant concedes that no emergency existed in either instance.  The appellate court equated "good cause" with "endangerment" and found no evidence of either.  Claimant initially criticizes the court's reasoning, arguing that "endangerment" is not the sole means by which to establish "good cause."  However, since claimant does not allege any circumstance other than endangerment, this point is moot.

In arguing that endangerment was present here, claimant proceeds from a false premise.  She believes that if surgery would be beneficial, its delay automatically constitutes "endangerment."  This definition is too broad.

Since surgery contemplates constructive, not destructive, results, claimant's definition nullifies R.C. 4121.44(A) and Ohio Adm. Code 4121-17-24.  Any delay would be considered an endangerment, eliminating the need to ever seek pre-authorization.  This obviously was not the General Assembly's intention.

"Endangerment," at a minimum, implies that the condition would worsen without intervention. In tandem with "emergencies," it also implies that time is critical. Both criteria should be met before an "endangerment" sufficient to excuse pre-authorization is found. In the case before us, these elements have not been satisfied.

A review of the record reveals that claimant has always complained of back pain, although examining physicians have consistently made minimal objective findings. At least three doctors, particularly Dr. Brodsky, have also stated that claimant's symptoms have a large psychological component. The evidence reveals no unexpected change in claimant's condition that suddenly made surgery so imperative that it had to proceed immediately without prior approval. Claimant's most recent claim of radiating right leg pain, for example, had been present for five months before her consultation with Dr. Brodsky.

Dr. Brodsky's reports also did not indicate that claimant's condition would worsen without surgery, let alone immediate surgery. In his October 1988 report, for example, he wrote:

"The patient presents no major objective findings. * * * [T]here is a tremendous functional overlay in this case and it has probably been present for a long time, and which I think has certainly influenced her failure to improve. She has also been on medications a long time * * * and I think that this is interfering with her recovery and the medications need to be revised and narcotics eliminated completely."

Dr. Brodsky's discharge summary also noted:

"She [claimant] was seen by psychiatry[.] Dr. Malev felt that this patient was suffering from severe depression and that she may have a wish for continued disability, as it seems more secure for her * * *. * * * Dr. Brodsky sat down and discussed with the patient * * * that she did have a surgical problem of instability, as well as some nerve depression in her back. He also explained that surgery was not the answer to her problems * * *."

Claimant latches onto a passing reference to suicidal ideation in her medical history as evidence of endangerment. In his October 17, 1988 report, Dr. Brodsky noted:

"Five months ago, pain began to radiate down the right leg as well as numbness of the right lower leg. The patient has contemplated suicide."

Claimant's position assumes that Dr. Brodsky performed the operation in response to this information. His reports and discharge summary, however, do not support this conclusion.

This case amply illustrates the purpose behind, and desirability of, securing pre-authorization. Given Dr. Brodsky's comments, a request for approval would have permitted the Bureau of Workers' Compensation, the Industrial Commission, or appellee-employer to obtain a second opinion as to surgical necessity and to explore other options that may have been both less costly and more beneficial to claimant.

A case for endangerment is even more remote in the case of Dr. Gonzalez's surgery in October 1989. There, the element of immediacy was completely lacking. On July 21, 1989, he initially discussed "[t]he possibility of the removal of the

hardware * * * [and she is to] return to the Clinic in 3 months for re-evaluation."  Obviously, Dr. Gonzalez did not feel a delay in the operation would be detrimental.  Had that been the case, he presumably would have acted immediately.  The three-month period between initial discussion and surgery provided claimant ample opportunity to seek surgical pre-approval.

Accordingly, the appellate court's judgment is affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright,  Resnick, F.E. Sweeney and Pfeifer, JJ., concur.