OPINION
{¶ 1} Defendant-appellant, Maurice Smith, appeals the June 6, 2005 conviction and sentence of the Court of Common Pleas, Allen County, Ohio. After a jury trial, Smith was convicted of one count of trafficking in crack cocaine in violation of R.C.2925.03(A)(C)(4)(c) and sentenced to twelve months imprisonment plus an additional 382 days for violation of previously imposed post release control sanctions. On appeal, Smith argues that the trial court erred in admitting laboratory reports and accompanying affidavits of laboratory technicians who did not testify at trial, that the trial court erred in refusing to give his requested jury instruction on complicity, and that the trial court erred in permitting the prosecution to argue that Smith's silence and lack of reaction when witnessing a drug transaction was evidence of complicity.
 {¶ 2} Smith was arrested following an undercover investigation conducted by the West Central Ohio Crime Task Force. With the cooperation of a confidential informant, Nicole Ball, several officers from the task force made a controlled buy of crack cocaine. Ball arranged a purchase via a telephone conversation with one Andrew Brown. She informed Brown that she had three hundred dollars and wished to purchase the cocaine, and then informed him that she was staying at a nearby Motel Six in room 119.
 {¶ 3} Approximately one half hour later, police surveillance units stationed at the motel observed a white SUV drive up to the Motel Six and park directly in front of room 119. Two men got out of the vehicle and knocked on the door to room 119; officers later identified Brown as the person who exited the vehicle from the passenger side door and Smith as the person who exited from the driver side. Undercover officers inside of the room, including one Investigator Johnson, observed the two men enter room 119, and briefly spoke to the man identified as Brown. Investigator Johnson pulled out three hundred dollars and moved to give it to Brown, but Brown motioned toward Defendant Smith. Smith accepted and counted the money, and then signaled to Brown that the amount was satisfactory. There is conflicting testimony in the record regarding whether or not Smith verbalized consent to the dollar amount, or whether he physically motioned to Brown that the amount was sufficient. Regardless, Smith indicated to Brown that Investigator Johnson had produced a sufficient amount of cash.
 {¶ 4} After Smith verified the amount of the money, Brown pulled out a plastic bag and weighed a portion of the contents on a digital scale that was on the dresser in the motel room. He did not identify the substance in the bag. However, a brief discussion ensued between Investigator Johnson and Brown regarding an acceptable quantity of the substance for the amount of money involved. After this discussion, the officers and Brown agreed on an acceptable arrangement, at which point Investigator Johnson signaled his fellow officers to take Smith and Brown into custody.
 {¶ 5} During a search incident to arrest, officers found in Smith's pants pocket the three hundred dollars of "buy money" Investigator Johnson had handed to Smith, as well as the keys to the white SUV. Additionally, the police took possession of the substance contained in the plastic bag and on the digital scale. A chemical analysis was performed on that substance and the laboratory reports from the analysis identified the substance as crack cocaine.
 {¶ 6} Smith was later indicted on one count of trafficking in drugs in violation of the R.C. 2925.03(A)(C)(4)(c), and at trial the prosecutor presented a complicity theory in which she argued for conviction of Smith as an accomplice in the drug sale transaction. The prosecutor offered into evidence the laboratory reports and accompanying affidavits of the laboratory technicians who tested the samples. These reports were offered as prima facie evidence of the identity and amount of the substances recovered from the buy operation pursuant to R.C. 2925.51, which provides in pertinent part:
(A) In any criminal prosecution for a violation of thischapter or Chapter 3719. of the Revised Code, a laboratory reportfrom the bureau of criminal identification and investigation, alaboratory operated by another law enforcement agency, or alaboratory established by or under the authority of aninstitution of higher education that has its main campus in thisstate and that is accredited by the association of Americanuniversities or the north central association of colleges andsecondary schools, primarily for the purpose of providingscientific services to law enforcement agencies and signed by theperson performing the analysis, stating that the substance thatis the basis of the alleged offense has been weighed and analyzedand stating the findings as to the content, weight, and identityof the substance and that it contains any amount of a controlledsubstance and the number and description of unit dosages, isprima-facie evidence of the content, identity, and weight or theexistence and number of unit dosages of the substance. * * *
 Attached to that report shall be a copy of a notarizedstatement by the signer of the report giving the name of thesigner and stating that the signer is an employee of thelaboratory issuing the report and that performing the analysis isa part of the signer's regular duties, and giving an outline ofthe signer's education, training, and experience for performingan analysis of materials included under this section. The signershall attest that scientifically accepted tests were performedwith due caution, and that the evidence was handled in accordancewith established and accepted procedures while in the custody ofthe laboratory.
 (B) The prosecuting attorney shall serve a copy of the reporton the attorney of record for the accused, or on the accused ifthe accused has no attorney, prior to any proceeding in which thereport is to be used against the accused other than at apreliminary hearing or grand jury proceeding where the report maybe used without having been previously served upon the accused.
 (C) The report shall not be prima-facie evidence of thecontents, identity, and weight or the existence and number ofunit dosages of the substance if the accused or the accused'sattorney demands the testimony of the person signing the report,by serving the demand upon the prosecuting attorney within sevendays from the accused or the accused's attorney's receipt of thereport. The time may be extended by a trial judge in theinterests of justice.
 (D) Any report issued for use under this section shall containnotice of the right of the accused to demand, and the manner inwhich the accused shall demand, the testimony of the personsigning the report.
R.C. § 2925.51.
 {¶ 7} Thus, R.C. 2925.51 permits the prosecution to submit a laboratory report as evidence in drug cases, and the statute requires the prosecution to serve a copy of the report on the defendant. Under the statute, the laboratory reports will serve as prima facie evidence of the identity and weight of the controlled substance unless the defendant demands the testimony of the person who signed the report within seven days of receiving the prosecutor's notice of intent to submit the report. R.C. 2925.51(C).
 {¶ 8} In the instant case, Smith did not demand the testimony of the laboratory technicians and they were not presented as witnesses at trial. However, Smith did object to the submission of the reports and accompanying affidavits on grounds that their inclusion into evidence violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The trial court overruled that objection and allowed the reports to be entered into evidence without the accompanying testimony of the laboratory technicians.
 {¶ 9} Smith was convicted on the sole count contained in the indictment after a jury trial and was later sentenced to twelve months imprisonment. He now appeals, asserting three assignments of error.
 I The trial court erred by admitting into evidence, overobjection, a laboratory report and technician's affidavit inviolation of the appellant's constitutional right ofconfrontation.
 {¶ 10} In his first assignment of error, Smith argues that the admission into evidence of the laboratory reports and accompanying affidavits over his objection violated his right to confront the witnesses against him embodied in theSixth Amendment to the United States Constitution,[1] citingCrawford v. Washington (2004), 541 U.S. 36.
 {¶ 11} As we recently noted in our decision in State v.Crager, Marion App. No. 9-04-54, 2005-Ohio-6868, the Crawford
decision changed the legal landscape surrounding Confrontation Clause issues. Prior to Crawford, courts examining Confrontation Clause claims focused on the reliability of the testimony as required under the Supreme Court decision in Ohiov. Roberts (1980), 448 U.S. 56. Under Roberts, the declarant's statement would only be admissible if it contained "adequate indicia of reliability," which could either be established by showing that the statement fell within a "firmly rooted hearsay exception" or had "particularized guarantees of trustworthiness." Id. Moreover, the Roberts rule required the prosecution to show that the declarant was unavailable at trial. Id. at 66.
 {¶ 12} In Crawford, the Court held that testimonial statements made by the defendant's wife to the police were inadmissible because the wife was not available to testify at trial. In doing so, the Court re-examined the analysis prescribed by Roberts, and rejected the prior focus on the reliability of the statement. The Court noted that the "ultimate goal [of the Confrontation Clause] is to ensure reliability of evidence."Crawford, 541, U.S. at 61. However, after an extensive review of the history surrounding the Clause, the Court ultimately determined that it provides "a procedural rather than [a] substantive guarantee." Id. Specifically, the Court stated that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Id. at 68-69. Therefore, the Court held that the Confrontation Clause prohibited the government from introducing any out-of-court testimonial evidence against a criminally accused defendant absent unavailability and a prior opportunity for cross-examination. Id. at 68.
 {¶ 13} In the instant case, however, the State argues thatCrawford does not apply to the laboratory reports in question, because they are not "testimonial." As we noted in Crager, the analysis mandated by Crawford applies only to evidence that can be deemed "testimonial" in nature. Crager, at ¶ 25-26; seeCrawford, 541 U.S. at 68 (distinguishing between "testimonial" and "non-testimonial" out-of-court statements). Although the Supreme Court left "for another day" the task of creating a comprehensive definition of "testimonial," we specifically addressed the question in Crager of whether such reports can be considered testimonial statements, and we concluded that a DNA report must be considered "testimonial" under Crawford.Crager, at ¶ 29. We reaffirm that decision today.
 {¶ 14} In its brief before this court, the State cites several cases from other jurisdictions that have found similar reports to be "non-testimonial" in nature, and therefore unaffected by Crawford. As noted in Crager, supra, we disagree with the analysis utilized in those decisions. The cases cited by the State focus on the reliability of the reports and the manner in which they are prepared rather than the nature of the information relayed by the report.[2] For example, the State cites to a decision of the Alabama Court of Criminal Appeals which found that an autopsy report is non-testimonial.Smith v. State (2004), 898 So.2d 907. In that case, the court did not give any justification for its conclusory finding that an autopsy report is non-testimonial other than the fact it had previously held that autopsy reports were admissible under the business records exception, an exception which exists because such records are ordinarily deemed reliable. Id. at 916. Likewise, a California Court of Appeals found that a laboratory report was "non-testimonial" because it was "routine documentary evidence" and any accompanying testimony would merely "authenticate the documentary material." State v. Johnson
(2004), 18 Cal.App.4th 1409, 1412-13, 18 Cal.Rptr.3d 230. Additionally, the State cites State v. Dedman (2004),136 N.M. 561, 102 P.3d 628, for the holding that a blood alcohol report was non-testimonial under Crawford. Id. at ¶ 30. That court based its finding on the fact that "a blood alcohol report is generated by [Department of Health] personnel, not law enforcement, and the report is not investigative or prosecutorial," and that such reports were prepared through a "routine, non-adversarial" process "made to ensure an accurate measurement." Id.
 {¶ 15} Thus, these courts based their findings that the reports at issue were non-testimonial, in part, on the premise that the reports themselves were inherently reliable. However, the Supreme Court in Crawford specifically rejected any notion that the reliability of the statement had any bearing on whether the statement could be considered "testimonial." The Court stated, "Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphousnotions of `reliability.'" Crawford, 541 U.S. at 61. As previously noted, the Court emphasized that the Confrontation Clause provided a procedural guarantee which required a specific means of determining reliability. Id. at 68. "[The Clause] commands, not that evidence be reliable, but that reliability be assessed in a particular manner: the testing in the crucible of cross-examination." Id. Thus, under Crawford, the Confrontation Clause does not require a determination of the reliability of an out-of-court statement, but rather prescribes confrontation as the singular method for determining reliability. Id. ("The Clause thus reflects a judgment, not only about the desirability of reliable evidence * * *, but about how reliability can best be determined.").
 {¶ 16} Accordingly, we reaffirm our decision in Crager, in which we specifically rejected any line of reasoning that permitted laboratory reports to be admitted into evidence under the business records exception to the hearsay rule without a right of confrontation. Crager at ¶ 31. The reliability of these reports is irrelevant when determining whether the evidence is testimonial under Crawford, and therefore the fact that they have been deemed inherently reliable under the rules of evidence is likewise irrelevant.
 {¶ 17} The determination that Smith had a right to confront the laboratory technicians before the reports could be entered into evidence against him does not end our analysis, however, because nothing in the Crawford decision prohibits a criminal defendant from waiving his confrontation rights. Indeed, criminal defendants waive constitutional protections frequently, whether by pleading guilty and foregoing the right to trial and the right to have the State prove all of the elements of the indicted offense, by requesting a bench trial and foregoing the right to a jury, or by taking the witness stand and giving up theFifth Amendment right not to testify. In the instant case, the question we must next address is whether Smith waived his right to confront the laboratory technicians by failing to respond under R.C. 2925.51.
 {¶ 18} We hold that a criminal defendant can waive his confrontation rights by failing to demand the testimony of the laboratory technicians under R.C. 2925.51(C). First, nothing inCrawford or in the text of the Sixth Amendment requires that the right of confrontation must occur at trial; the Amendment merely states that the defendant has the right to confrontation during the course of the prosecution. U.S. Const. amend. VI. The "prosecution" has commenced once the defendant has been indicted. Just as Smith would have waived his confrontation rights by not objecting if the report was submitted at trial without the accompanying testimony, under the statute Smith waives his right to confrontation when he fails to demand the testimony of the technician. There is no constitutional violation by requiring the criminal defendant to assert the confrontation right at a specific time; the common law already required that the defendant assert the right at trial or it is waived. City of Westlake v.Moore, Eighth App. NO. 79293, 2002-Ohio-1097, 2002 WL 451295, at *2 (citing State v. Williams (1977), 51 Ohio St.2d 112,364 N.E.2d 1364).
 {¶ 19} Second, this conclusion is strengthened in this case due to the specificity of the statute and its requirements. R.C.2925.51 only applies in a limited number of cases and only for a very specific purpose — to establish the identity and weight of a substance believed to be narcotics. Moreover, the statute requires the prosecutor to serve the defendant with a copy of the report along with a notarized statement signed by the technician stating the technician's qualifications and the scientific validity of the testing procedures. R.C. 2925.51(B). The statute then requires the prosecution to provide notice of the right to demand testimony when serving the report on the defendant. R.C.2925.51(D). On the other hand, the actions required of the defendant are not burdensome; if he wishes to examine the technician he need only indicate that desire to the prosecutor within seven days. R.C. 2925.51(C). The statute even provides that the time period for notification can be extended beyond seven days if "the interests of justice" so require. Id.
 {¶ 20} Finally, in addition to these protections, under the statute the defendant is provided with the precise evidence to be introduced against him, i.e. the entire drug analysis and the qualifications of the technician who performed it. Thus, the defendant has the ability to "confront" the statements against him if he so chooses and has been fully informed as to the exact testimony to which he is waiving his confrontation rights. These aspects of the statute, coupled with the fact that we have imposed the requirements of the statute strictly against the prosecution, see State v. Bates, Allen App. No. 1-03-83,2004-Ohio-2219, ¶ 5-10, provide sufficient protections to the defendant's confrontation rights such that if he fails to act after proper notification he has knowingly, intelligently, and voluntarily waived his confrontation rights.
 {¶ 21} The question, then, is whether the defendant has properly waived those rights in the case sub judice. Ordinarily, waiver of the confrontation right before trial must be made knowingly, intelligently, and voluntarily. See Boykin v.Alabama (1969), 39 U.S. 238; State v. Ballard (1981),66 Ohio St.2d 473, 423 N.E.2d 115. Thus, the defendant must be fullyinformed as to the consequences of the waiver. In this case we cannot say that the State's notice was adequate to fully inform the defendant as to the consequences of waiver under the statute.
 {¶ 22} We note that the State fully complied with the minimal requirements of R.C. 2925.51(D) by informing Smith of the right to demand the technician's testimony. The State submitted the laboratory report in its "Supplemental Response to Defendant's Demand for Discovery," citing only to Crim.R. 16(B)(1). Following the report and the attached affidavit, the State then placed the following notification at the end of the laboratory technician's affidavit:
 NOTICE TO ACCUSED THE ACCUSED HAS THE RIGHT TO DEMAND THE TESTIMONY OF THE NAMEDANALYST ABOVE BY SERVING SUCH DEMAND UPON THE PROSECUTINGATTORNEY WITHIN SEVEN (7) DAYS OF THE ACCUSED'S OR HIS ATTORNEY'SRECEIPT OF THE LABORATORY REPORT.
 {¶ 23} However, the prosecution did not fully inform Smith of the constitutional rights he was waiving under the statute by failing to demand the technician's testimony. The notice provision in subsection (D) must be read in the context of the entire statute. Commerce Industry Ins. Co. v. Toledo (1989),45 Ohio St.3d 96, 102, 543 N.E.2d 1188 ("words and phrases in a statute must be read in context of the whole statute"). R.C.2925.51(B) requires the prosecutor to serve a copy of the report "prior to any proceeding in which the report is to be used against the accused," and subsections (A) and (C) specifically define the circumstances under which the report can be used as prima facie evidence against the accused. Hence, the purpose of serving the report on the defendant and notifying him that he has a right to demand testimony is to inform him that the report will be offered into evidence against him without such testimony unless he makes such a demand.
 {¶ 24} The State's notification, though fully compliant with R.C. 2925.51(D), makes no mention of the statute or of the consequences of waiver set forth in the statute; namely, that failure to make the demand will permit the laboratory report to serve as prima facie evidence of the conclusions in the report without the testimony of the technician. In fact, the State's notice in this case even fails to indicate that the laboratory report is evidentiary material, but rather couches it as a response to discovery.[3] The demand requirement of R.C.2925.51(D) does not indicate to the defendant that the report will serve as prima facie evidence unless a written demand for the technician's testimony is made. This notice is insufficient to fully inform the defendant of the consequences of failing to demand the witness's testimony, and without such notice the defendant cannot be said to have knowingly, intelligently, and voluntarily waived his constitutional rights.
 {¶ 25} In other words, although R.C. 2925.51(D) only requires notice of the defendant's right to demand the technician's testimony and the manner in which that demand must occur, the Constitution requires that the defendant knowingly, intelligently, and voluntarily waives the confrontation right. Where the prosecutor fails to notify the defendant of the purpose for serving a copy of the report on the defendant, fails to indicate that it is being served pursuant to R.C. 2925.51, and fails to indicate that it is evidentiary material that will be entered into evidence without the defendant having the right to confront the technician unless he demands to do so, the defendant has not been properly put on notice that he is waiving his confrontation right as provided in the statute. Therefore, we cannot say that Smith knowingly, intelligently, and voluntarily waived his right to confrontation.
 {¶ 26} To reiterate, the laboratory report in question is testimonial evidence under the Supreme Court's decision inCrawford, and therefore Smith has a right to confront the laboratory technician who "testifies" through the report. In the ordinary case the State can utilize the evidentiary procedures outlined in R.C. 2925.51 to submit the laboratory report as evidence without the accompanying testimony, and if the defendant does not demand the testimony he or she waives the right to confrontation. The provisions in the statute, particularly the requirements in subsections (A) and (B), sufficiently protect the defendant's Confrontation Clause rights. However, in order to obtain a valid waiver of those rights the prosecution must go beyond the minimal demand requirements outlined in R.C.2925.51(D). The prosecution must fully notify the defendant of the effect of his failing to make a demand, which we hold necessarily includes informing the defendant that the report will be used as prima facie evidence against him as specified in the statute.
 {¶ 27} Accordingly, the prosecution in the instant case did not provide proper notification sufficient to obtain a knowing, intelligent, and voluntary waiver from Smith of his constitutional right to confront the laboratory technicians, and therefore the laboratory report could not be submitted as evidence at trial. Smith's first assignment of error is sustained.
 II The trial court erred by refusing to give appellant'srequested jury instructions regarding the law of complicity.
 {¶ 28} In his second assignment of error, Smith argues that the trial court erred in refusing to give three requested jury instructions on the issue of complicity. Specifically, Smith requested instructions that (1) proof of mere association with the principal offender is insufficient to prove complicity; (2) the defendant's mere presence at the scene is insufficient to establish complicity; and (3) the prosecution must establish that there is some knowledge, proof of conspiracy to do the act or some preceding connection with a transaction in order for there to be complicity.
 {¶ 29} The Supreme Court of Ohio has held that "it is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge." State v.Scott (1986), 26 Ohio St.3d 92, 101, 497 N.E.2d 55, 63. However, the court need not present the requested instruction verbatim and is free to use its own language; we must examine the context of the overall charge to determine if the court properly instructed the jury on the issues requested. State v. Sneed (1992),63 Ohio St.3d 3, 9, 584 N.E.2d 1160 (citations omitted); see also,Cupp v. Naughten (1973), 414 U.S. 141, 147. Thus, the determination whether to include the instruction as requested by the defendant is reviewed for an abuse of the trial court's discretion. See State v. Guster (1981), 66 Ohio St.3d 266, 271,421 N.E.2d 157 (citing State v. Nelson (1973),36 Ohio St.2d 79, 84-85).
 {¶ 30} We find that the trial court properly instructed the jury on the issue of complicity, and that the specific legal principles addressed in Smith's requested jury instructions were covered in the general charge. Therefore, we find that the trial court did not abuse its discretion in refusing to give the jury instructions as transcribed by the defendant.
 {¶ 31} The trial court instructed the jury on the issue of complicity as follows:
Before you can find the defendant guilty of complicity youmust find beyond a reasonable doubt that on or about the 14th dayof December, 2004, in Allen County, Ohio, the defendant aided orabetted another in committing the offense.
 Aided or abetted means supported, assisted, encouraged,cooperated with, advised, or incited.
Although defendant's requested instructions stating that mere association with the principal offender or mere presence at the scene are insufficient to establish complicity are correct statements of the law, the court's instruction on complicity sufficiently covers these legal principles. The instruction makes clear that the defendant, if he is to be convicted under a complicity theory, must have done some affirmative act that supported, assisted, encouraged, cooperated with, advised, or incited the principal offender. The instruction therefore makes clear that presence at the scene or association with the principal is insufficient to establish complicity.
 {¶ 32} The trial court further instructed the jury on the requisite knowledge required to establish complicity:
A person acts knowingly, regardless of his purpose, when he isaware that his conduct will probably cause a certain result or heis aware that this conduct will probably be of a certain nature.* * * Knowledge means that a person is aware of the existence ofthe facts and that his acts will probably cause a certain resultor be of a certain nature.
 {¶ 33} Based on this instruction, the jury was properly made aware of the level of knowledge required to establish complicity. Therefore, the legal principle addressed in Smith's third requested jury instruction was properly included in the trial court's instructions.
 {¶ 34} Based on the foregoing, Smith's second assignment of error is overruled.
 III The trial court erred by permitting, over objection, theprosecutor to argue that appellant's silence and lack of reactionafter observing an illegal drug transaction as evidence ofcomplicity.
 {¶ 35} In his third assignment of error, Smith argues that the trial court erred in permitting the State to argue that Smith's silence or lack of reaction in the course of the drug deal was evidence of his knowledge that Brown intended to commit a drug transaction at the motel. Smith asserts that this was a misstatement of the law because in order to prove complicity, the State must demonstrate "some level of active participation by way of providing assistance or encouragement." State v. Ratkovich,
7th Dist. No. 02-JE-16, 2003-Ohio-7286, ¶ 16. For the reasons that follow, this assignment of error is not well taken.
 {¶ 36} Smith contends that the prosecution misstated the law by saying that Smith's presence at the motel with Brown and his silence and lack of reaction when the drug transaction commenced was sufficient evidence to establish complicity. However, this is not the argument that the prosecution was making in closing argument. Rather, the prosecutor merely argued that Smith's lack of reaction to the drug transaction was some evidence of his knowledge of that the transaction was going to occur. Smith objected to the following statements made by the prosecutor in closing arguments:
PROSECUTOR: Investigator Johnson, I think the last question Iasked him on the stand yesterday afternoon was what, if anything,did Maurice Smith say when you passed him the money or when thebartering over the amount of drugs was going on? What did he sayduring that whole thing? The answer was, "absolutely nothing."That is key. If Maurice Smith — if this guy did not know what wasgoing on, ask yourself what would an unknowing, innocent, anduninvolved person have done or said under the circumstances?
* * *
PROSECUTOR: The State would suggest to you that when you askyourself that question — [if] Maurice Smith did not know what wasgoing on, was not actively participating and knowingly [sic] in adrug deal, that at some point he would have said something.
* * *
PROSECUTOR: As I was saying, the State would suggest that whenyou consider Maurice Smith's reaction, or lack thereof, hissilence, that is critical evidence of his knowledge of the drugdeal and his intent to participate.
Thus, the prosecutor was clearly arguing that Smith's lack of reaction was evidence of his knowledge that a drug transaction was going to occur.
 {¶ 37} Smith's knowledge of the principal offense was necessary to convict him under a complicity theory. "In order to establish complicity to a crime, R.C. 2923.03 requires that the state establish that the accused acted with the culpability required for the commission of the underlying offense." State v.Head, 11th Dist. No. 2001-L-228, 2005-Ohio-3407, ¶ 19; see also R.C. 2923.03(A). The culpability required for drug trafficking offenses is that the defendant acted "knowingly." R.C.2925.03(A). Thus, in order to convict Smith under the theory of complicity offered at trial — that Smith aided or abetted Brown — the prosecution was required to prove that Smith knowingly aided or abetted Brown in conducting the drug transaction. Accordingly, the prosecutor did not misstate the law in closing arguments.
 {¶ 38} Moreover, even if there had been any error in the prosecution's statement of the law, we review prosecutorial remarks in closing arguments to determine if they were improper and "whether they prejudicially affected the substantial rights of the defendant." State v. Smith (1984), 14 Ohio St.3d 13, 14. Even had the prosecutor's statements been improper, we find that they did not prejudice Smith's rights. As stated previously, the trial court properly instructed the jury on the elements required to prove complicity and on the requisite knowledge needed on the part of the defendant. Moreover, there was ample evidence presented to demonstrate that Smith did commit an "affirmative act" that would establish complicity: Smith drove the vehicle to the motel and he received and counted the money. This evidence would be sufficient to demonstrate complicity.
 {¶ 39} Accordingly, we find that the trial court did not err in overruling Smith's objections to the prosecution's closing arguments. Based on the foregoing, Smith's third assignment of error is overruled.
 {¶ 39} However, due the resolution of the first assignment of error, the judgment and sentence of the trial court is reversed and the cause remanded for further proceedings in accordance with this opinion.
Judgment Reversed and Cause Remanded.
 Bryant, P.J., and Cupp, J. concur.
[1] The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." U.S. Const. amend. VI.
[2] The case the State relies on for his primary authority,People v. Hinojas-Mendoza (July 8, 2005), Colorado Court of Appeals No. 03CA0645, offers no rationale on its own and merely relies on the above cases for its finding that the laboratory report in question was non-testimonial.
[3] In Bates, supra, we held that "R.C. 2925.51 is not a discovery measure; rather it is evidentiary in nature providing a specific statutory exception to the hearsay rule." Bates, at ¶ 9 (citations omitted).