OPINION
{¶ 1} Defendant-appellant Evan J. Eastman appeals the March 6, 2006 Judgment Entry of the Licking County Municipal Court denying his motions to suppress evidence. Plaintiff-appellee is the Village of Granville.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On October 25, 2005, Officer Shawn Wilson of the Granville Police Department arrested appellant and charged him with two counts of operating a motor vehicle while under the influence of alcohol, in violation of Granville Village Ordinances Sections 333.01(A)(1) and 333.01(A)(4).
 {¶ 3} Appellant filed a motion to suppress on January 12, 2006. The trial court conducted a hearing on the motion on February 7, 2006.
 {¶ 4} At the suppression hearing, Floyd Zinc, a Dennison University Security Officer, testified he saw a vehicle operated by appellant run a stop sign. Zinc stated he pursued the vehicle, and saw it run a second stop sign. The vehicle then pulled into a parking lot in a residential area.
 {¶ 5} Zinc pulled up behind the vehicle, and told appellant to stay inside. Zinc questioned appellant, and detected an odor of alcohol on appellant. Zinc then called the Granville Police dispatcher, and Officer Sean Wilson responded.
 {¶ 6} Upon arrival Zinc informed Officer Wilson of his observations. Officer Wilson testified he questioned appellant, and appellant told him he "had a couple." Officer Wilson observed appellant's bloodshot, glassy eyes and slurred speech. Officer Wilson administered the horizontal gaze nystagmus test, the walk and turn test, and the one-legged stand test. Appellant declined a breath test at the scene.
 {¶ 7} Officer Wilson arrested appellant for OVI. After arriving at the station, Wilson observed appellant for twenty minutes, and advised him of the consequences of not taking the breath test. Appellant agreed to provide a sample. Wilson testified he performed an instrument check on the BAC Datamaster prior to administering the test.
 {¶ 8} Via Judgment Entry of March 6, 2006, the trial court overruled appellant's motion to suppress. Appellant then changed his plea to no contest. The trial court found appellant guilty of the charges and sentenced him accordingly.
 {¶ 9} Appellant now appeals the March 6, 2006 Judgment Entry of the Licking County Municipal Court, assigning as error:
 {¶ 10} "I. THE TRIAL COURT ERRED BY ADMITTING OUT OF COURT STATEMENTS THEREBY DEPRIVING APPELLANT OF THE RIGHT TO CONFRONT WITNESSES AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
 {¶ 11} "II. THE STOP AND DETENTION OF APPELLANT VIOLATED HIS RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION BECAUSE IT WAS NOT SUPPORTED BY PROBABLE CAUSE.
 I {¶ 12} In his first assignment of error appellant maintains the trial court erred in allowing the State to present documents prepared by individuals who did not appear and testify in court.
 {¶ 13} At the suppression hearing, the State introduced a packet of documents relating to the breath test conducted on appellant. The packet contains documents evidencing the breath test results and instrument checks performed on the BAC Datamaster on dates prior and subsequent to the date of appellant's arrest. The instrument checks were performed by Sergeant David Dudgeon and Officer Suzanne Dawson of the Granville Police Department. The packet also contains documents executed by the Director of the Ohio Department of Health evidencing the status of Wilson, Dudgeon and Dawson as Senior Operators qualified to perform instrument checks and operate the BAC Datamaster, as well as, certification of batch solution used to perform the instrument checks. Dudgeon, Dawson and the Director of Health were not called upon to testify at the suppression hearing.
 {¶ 14} The Ohio Supreme Court has held trial courts may rely on hearsay and other evidence to determine whether alcohol test results were obtained in compliance with methods approved by the Director of Health, even though potentially not admissible at trial, at suppression hearings. State v. Edwards107 Ohio St.3d 169, 2005-Ohio-6180.
 {¶ 15} However, appellant maintains the documents were presented without him having been afforded the opportunity to cross-examine the persons reporting the information appearing in the documents. Appellant argues the documents are testimonial; therefore, pursuant to Crawford v. Washington (2004),541 U.S. 36, the Confrontation Clause prohibits the introduction of the evidence without appellant being afforded the opportunity to cross-examine those who prepared the documents.
 {¶ 16} Pursuant to Crawford, appellant maintains the statements were made under circumstances, which would lead an objective witness reasonably to believe the statement would be available for use at a later trial. Appellant cites State v.Smith, Allen App. No. 1-05-39, 2006-Ohio-1661, addressing a challenge to the admissibility of laboratory reports and accompanying affidavits in a drug prosecution. The Smith court found such reports testimonial; therefore, subject to Crawford.
 {¶ 17} However, this case is distinguishable from Smith. InSmith, Smith was indicted on one count of trafficking in drugs in violation of the R.C. 2925.03(A) (C)(4)(c), and at trial the prosecutor presented a complicity theory in which she argued for conviction of Smith as an accomplice in the drug sale transaction. The prosecutor offered into evidence laboratory reports and accompanying affidavits of the laboratory technicians who tested the recovered samples. These reports were offered as prima facie evidence of the identity and amount of the substances recovered from the buy operation pursuant to R.C. 2925.51, which provides in pertinent part:
 {¶ 18} "(A) In any criminal prosecution for a violation of this chapter or Chapter 3719. of the Revised Code, a laboratory report from the bureau of criminal identification and investigation, a laboratory operated by another law enforcement agency, or a laboratory established by or under the authority of an institution of higher education that has its main campus in this state and that is accredited by the association of American universities or the north central association of colleges and secondary schools, primarily for the purpose of providing scientific services to law enforcement agencies and signed by the person performing the analysis, stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance. * * *
 {¶ 19} "Attached to that report shall be a copy of a notarized statement by the signer of the report giving the name of the signer and stating that the signer is an employee of the laboratory issuing the report and that performing the analysis is a part of the signer's regular duties, and giving an outline of the signer's education, training, and experience for performing an analysis of materials included under this section. The signer shall attest that scientifically accepted tests were performed with due caution, and that the evidence was handled in accordance with established and accepted procedures while in the custody of the laboratory.
 {¶ 20} "(B) The prosecuting attorney shall serve a copy of the report on the attorney of record for the accused, or on the accused if the accused has no attorney, prior to any proceeding in which the report is to be used against the accused other than at a preliminary hearing or grand jury proceeding where the report may be used without having been previously served upon the accused.
 {¶ 21} "(C) The report shall not be prima-facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance if the accused or the accused's attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report. The time may be extended by a trial judge in the interests of justice.
 {¶ 22} "(D) Any report issued for use under this section shall contain notice of the right of the accused to demand, and the manner in which the accused shall demand, the testimony of the person signing the report."
 {¶ 23} The Smith opinion held R.C. 2925.51 permits the prosecution to submit a laboratory report as evidence in drug cases, and the statute requires the prosecution to serve a copy of the report on the defendant. Accordingly, under the statute, the laboratory reports will serve as prima facie evidence of the identity and weight of the controlled substance unless the defendant demands the testimony of the person who signed the report within seven days of receiving the prosecutor's notice of intent to submit the report. R.C. 2925.51(C).
 {¶ 24} The documents at issue in the case sub judice are distinguishable from those at issue in Smith. Here, the documents were not prepared with an eye to a specific prosecution and an essential element of the offense; rather, they were administrative reports prepared according to administrative rules and regulations and foundational in nature, without regard to a specific prosecution. Accordingly, the documents fall within the business record exception, and we find they are not testimonial.State v. Cook (6th Dist. March 31, 2005), 2005-Ohio-1550.
 {¶ 25} In Cook, supra, the Sixth District addressed the admissibility of these documents holding:
 {¶ 26} "We find that these records are non-testimonial for two reasons. First, they bear no similarities to the types of evidence the Supreme Court labeled as testimonial: `prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and police interrogations.' Id. at 1367. The commonality among these types of evidence is that it is gathered in an "investigative or prosecutorial" setting, see State v.Dedman (N.M. 2004), 136 N.M. 561, 102 P.3d 628, 636, where a potential for abuse exists, id; Crawford, 124 S.Ct. at 1367. In this case, the documents relating to the BAC datamaster were not created in an investigatory or prosecutorial setting. For this reason, we conclude that they are not the type of testimonial evidence with which the Supreme Court was concerned inCrawford. See Dedman, 102 P.2d at 636 (holding that a report of blood test results is not testimonial under Crawford where the test was taken by a nurse and the report prepared by the Scientific Laboratory Division of the state Department of Health); Denoso v. State (Tex.App. Feb. 3, 2005), 13th Dist. No. 13-99-809-CR (certified copy of autopsy report is not testimonial because it is not analogous to the types of testimonial documents specified by the Court in Crawford);Napier v. State (Ind.App. 2005), 820 N.E.2d 144, 149
(certificate stating that the BAC DataMaster was in good working order not testimonial because it did not pertain to defendant's guilt and is unlike the types of testimonial evidence mentioned by the Court in Crawford).
 {¶ 27} "Second, we conclude that the records are business records, which, at least according to dicta in Crawford, are not testimonial. See Crawford, 124 S.Ct. at 1367. Business records are defined in Evid. R. 803(6) as follows:
 {¶ 28} "A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term `business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."
 {¶ 29} "In the affidavit accompanying the documents, Detective Shinaver averred: (1) that he is the custodian of the documents and has knowledge of the facts contained in them; and (2) that the documents are made and kept in the ordinary course of business. These statements satisfy Evid.R. 803(6). Further, there is no indication that Detective Shinaver lacks inherent trustworthiness or that the manner in which the documents were prepared lack trustworthiness. We therefore conclude that these are business records and not the type of testimonial evidence of concern to the Court in Crawford."
 {¶ 30} Here, Officer Wilson who conducted the appellant's breath test, testified as to calibrating the test prior to administration. The other documents relative to the Datamaster were presented according to administrative regulations, and were not testimonial in nature. Accordingly, we follow the rationale of Cook and overrule appellant's first assignment of error.
 II {¶ 31} In his second assignment of error, appellant argues the State's stop and detention of him violated his Fourth andFourteenth Amendment Constitutional rights.[1]
 {¶ 32} Specifically, appellant argues a police officer may not make a warrantless arrest for a misdemeanor offense unless the officer actually sees the offense being committed. Appellant argues the officer's reasonable belief probable cause exists must be based upon evidence perceived through his own senses. Statev. Reymann (1989), 55 Ohio App.3d 222.
 {¶ 33} Appellant asserts the security guard detained appellant and Officer Wilson never actually saw appellant drive; rather, his conclusions were derived from the security guard's observations.
 {¶ 34} Initially, we note security officers are private security guards and not state actors subject to Fourth Amendment scrutiny. State v. Shively (5th Dist. June 29, 2006)2006-Ohio-3506. Consequently, the focus is whether or not Officer Wilson had probable cause to arrest appellant.
 {¶ 35} In Oregon v. Szakovits (1972), 32 Ohio St.2d 271, the Ohio Supreme Court created an exception to the presence requirement where a police officer is able to reasonably conclude from the surrounding circumstances an offense has been committed. The Ohio Supreme Court held:
 {¶ 36} "In each case, appellant claims that the officer, before arrest, should have either obtained a warrant or viewed the actual operation of the vehicle. Appellees, in effect, maintain that under the facts in each of these cases, police officers may legally arrest without a warrant. We agree.
 {¶ 37} "* * *
 {¶ 38} "The facts in each of the instant cases show that an accident occurred on a public street and that both appellants were injured. While at the scene, both voluntarily admitted to driving the vehicles. There was no question of appellants being visibly under the influence of alcohol.
 {¶ 39} "After viewing the scene of the accident, and hearing appellants' admissions on a first-hand basis, the officers could reasonably conclude that each had been operating his vehicle shortly before the officers arrived. Coupled with the fact that appellants were obviously under the influence, the officers properly found each to have been violating an ordinance of the respective municipal corporations prohibiting driving while under the influence of alcohol."
 {¶ 40} In the instant case, Officer Wilson testified he relied on the information presented to him by the security guard (albeit hearsay), who witnessed appellant run two stop signs, detected the odor of alcohol, and heard appellant admit to consuming alcoholic beverages. Officer Wilson himself detected an odor of alcohol on appellant in questioning him and observed bloodshot, glassy eyes. Further, appellant admitted to Officer Wilson he had drunk "a few." Appellant then failed the three standard field sobriety tests. Accordingly, we find Officer Wilson could reasonably conclude from the surrounding circumstances an offense had been committed and probable cause existed to arrest appellant.
 {¶ 41} Appellant's second assignment of error is overruled.
 {¶ 42} The March 6, 2006 Judgment Entry of the Licking County Municipal Court is affirmed.
By: Hoffman, J., Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the March 6, 2006 Judgment Entry of the Licking County Municipal Court is affirmed. Costs assessed to appellant.
[1] We question appellant's representation he was illegally "stopped" inasmuch as he had pulled into the parking lot and apparently stopped without intervention by Mr. Zinc. However, we do agree appellant was detained until Officer Wilson arrived.