OPINION
{¶ 1} This matter is submitted to this court on the record and the briefs of the parties. Appellant, David Reuschling, appeals the judgment entered by the Ashtabula County Court of Common Pleas. Reuschling was sentenced to an aggregate six-year prison term for his convictions for possession of methamphetamine, tampering with evidence, illegal manufacture of drugs, and illegal assembly or possession of chemicals for the manufacture of drugs. *Page 2 
 {¶ 2} On March 12, 2006, Sergeant Mark Allen of the Ashtabula County Sheriffs Office was on routine patrol. He noticed a blue Ford Tempo being operated without its taillights on. He initiated a stop of the vehicle. Reuschling was a passenger in the vehicle. Since the vehicle had fictitious license plates, Sergeant Allen had the vehicle towed. Sergeant Allen discovered there was a warrant for Reuschling's arrest and proceeded to arrest him. Sergeant Allen conducted a protective pat-down search of Reuschling to check for weapons. During the search, he also asked Reuschling if he had any weapons. Reuschling responded by mumbling, and Sergeant Allen noticed Reuschling's cheek appeared to be swollen. Sergeant Allen suspected Reuschling was concealing something in his mouth and was eventually able to convince Reuschling to spit the item out. The item was a clear plastic baggie containing a large amount of white powder. The substance field-tested positive as methamphetamine. The identity of this substance as 13.97 grams of methamphetamine was confirmed through subsequent testing at the Ohio Bureau of Criminal Identification and Investigation.
 {¶ 3} At trial, Reuschling testified in his own behalf. He admitted to having the methamphetamine in his mouth. He testified he was working with the Ashtabula County Sheriffs Department in an undercover operation to find the bulk producers of methamphetamine in Ashtabula County. However, he acknowledged that he was not working a formal operation on the day in question.
 {¶ 4} On March 29, 2006, at 5:30 a.m., Daniel Binns arrived home from an overnight trip as a truck driver. He observed a strange car parked in the driveway. He entered the house and found his housemate, Joan Lomas, and her minor son asleep in an upstairs bedroom. Binns noticed a light on in the basement. He went downstairs to *Page 3 
investigate and noticed a strange film in the air with an odor. There were two men in his basement, one of which was holding a jug with hoses coming out of it. Binns yelled at the men and told them to leave. At trial, he identified one of the men as Reuschling.
 {¶ 5} Sergeant Robert Slocum, Deputy Robert Ginn, and Detective Bryan Rose of the Ashtabula County Sheriffs Department responded to Binn's residence. Sergeant Slocom testified there was a strong ammonia smell in the basement. He found a methamphetamine generator, which he described as a one liter pop bottle with a tube in it, in the basement sink. Outside, Sergeant Slocum noticed four white spots on the ground, which were consistent with methamphetamine residue being dumped. He also noticed a "burn pile," which is used to burn the waste products associated with methamphetamine production.
 {¶ 6} Deputy Ginn also noticed the methamphetamine generator in the basement. Also, he found finished methamphetamine in a coffee filter. He found a mason jar with residue in it. In addition, he found a bottle of Drain-O, which he testified is used in the production of methamphetamine.
 {¶ 7} On April 11, 2006, Reuschling was allegedly involved in the manufacture of methamphetamine. However, he was acquitted on the charge relating to this event.
 {¶ 8} Reuschling was indicted on five counts. Count 1 of the indictment charged Reuschling with possession of methamphetamine, in violation of R.C. 2925.11 and a second-degree felony. Count 2 of the indictment charged Reuschling with tampering with evidence, in violation of R.C. 2921.12 and a third-degree felony. Count 3 of the indictment charged Reuschling with illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041 and a third-degree felony. *Page 4 
Count 4 of the indictment charged Reuschling with illegal manufacture of drugs, in violation of R.C. 2925.04 and a first-degree felony. Count four alleged Reuschling committed this act in the vicinity of a juvenile. Count 5 of the indictment charged Reuschling with illegal assembly or possession of chemicals for the manufacture of drugs within the vicinity of a juvenile, in violation of R.C. 2925.041 and a second-degree felony. Counts one and two pertained to events that occurred on March 12, 2006. Count three related to events that allegedly occurred on April 11, 2006. Counts four and five concerned the events that occurred on March 29, 2006.
 {¶ 9} Reuschling pled not guilty to the charges, and a jury trial was held. At the close of the state's case-in-chief, Reuschling moved for acquittal pursuant to Crim.R. 29. The trial court denied his motion. Reuschling testified in his own defense. Thereafter, Reuschling renewed his motion for acquittal, which the trial court denied. The jury found Reuschling guilty on counts one, two, four, and five. The jury found Reuschling not guilty on count three. In addition, the jury found that count four was committed in the vicinity of a juvenile and that count five was not committed in the vicinity of a juvenile.
 {¶ 10} The trial court sentenced Reuschling to a three-year prison term for his conviction on count one; a three-year prison term for his conviction on count two; a six-year prison term for his conviction on count four; and a three-year prison term for his conviction on count five. All of Reuschling's prison terms were ordered to be served concurrently. Thus, Reuschling's aggregate prison term was six years.
 {¶ 11} Reuschling raises four assignments of error. His first assignment of error is: *Page 5 
 {¶ 12} "The trial court erred by admitting into evidence a laboratory report and technician's affidavit in violation of the appellant's constitutional right of confrontation."
 {¶ 13} Pursuant to R.C. 2925.51(C), the accused has the right to demand the testimony of the analyst by serving such demand on the prosecuting attorney within seven days of the accused's or his attorney's receipt of the laboratory report. Reuschling did not demand the analyst's testimony, and the analyst's report identifying the 13.97 grams of methamphetamine was admitted into evidence.
 {¶ 14} In State v. Smith, the defendant objected to the admission of the analyst's report on the basis that it violated the Confrontation Clause. State v. Smith, 3d Dist. No. 1-05-39, 2006-Ohio-1661, at ¶ 8. In this matter, Reuschling did not object to the admission of the report regarding methamphetamine. Therefore, he has waived all but "plain error." See, e.g., State v. Green (2000), 90 Ohio St.3d 352, 373, citingState v. Wade (1978), 53 Ohio St.2d 182, paragraph one of the syllabus. "Plain error" only exists where the results of the trial would have been different without the error. State v. Issa (2001), 93 Ohio St.3d 49, 56, citing State v. Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 15} Although Reuschling did not object to the admission of the report, he contends his trial counsel was ineffective for failing to object to the report as part of his third assignment of error. Thus, we will conduct an analysis of this issue on the regular standard of review, i.e. abuse of discretion, as if there was a proper objection made. See, e.g., State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43, citing State v. Issa, 93 Ohio St.3d at 64.
 {¶ 16} R.C. 2925.51 provides, in part: *Page 6 
 {¶ 17} "(A) In any criminal prosecution for a violation of this chapter or Chapter 3719. of the Revised Code, a laboratory report from the bureau of criminal identification and investigation, a laboratory operated by another law enforcement agency, or a laboratory established by or under the authority of an institution of higher education that has its main campus in this state and that is accredited by the association of American universities or the north central association of colleges and secondary schools, primarily for the purpose of providing scientific services to law enforcement agencies and signed by the person performing the analysis, stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance. In any criminal prosecution for a violation of section2925.041 of the Revised Code or a violation of this chapter or Chapter 3719. of the Revised Code that is based on the possession of chemicals sufficient to produce a compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V, a laboratory report from the bureau or from any laboratory that is operated or established as described in this division that is signed by the person performing the analysis, stating that the substances that are the basis of the alleged offense have been weighed and analyzed and stating the findings as to the content, weight, and identity of each of the substances, is prima-facie evidence of the content, identity, and weight of the substances. *Page 7 
 {¶ 18} "Attached to that report shall be a copy of a notarized statement by the signer of the report giving the name of the signer and stating that the signer is an employee of the laboratory issuing the report and that performing the analysis is a part of the signer's regular duties, and giving an outline of the signer's education, training, and experience for performing an analysis of materials included under this section. The signer shall attest that scientifically accepted tests were performed with due caution, and that the evidence was handled in accordance with established and accepted procedures while in the custody of the laboratory.
 {¶ 19} "(B) The prosecuting attorney shall serve a copy of the report on the attorney of record for the accused, or on the accused if the accused has no attorney, prior to any proceeding in which the report is to be used against the accused other than at a preliminary hearing or grand jury proceeding where the report may be used without having been previously served upon the accused.
 {¶ 20} "(C) The report shall not be prima-facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance if the accused or the accused's attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report. The time may be extended by a trial judge in the interests of justice.
 {¶ 21} "(D) Any report issued for use under this section shall contain notice of the right of the accused to demand, and the manner in which the accused shall demand, the testimony of the person signing the report." *Page 8 
 {¶ 22} The Sixth Amendment to the United States Constitution affords criminal defendants the right to confront adverse witnesses. State v.Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482, at ¶ 13. Previously, the relevant inquiry in a Confrontation Clause analysis was the "reliability" of the statement. State v. Smith, 3d Dist. No. 1-05-39,2006-Ohio-1661, at ¶ 11, citing Ohio v. Roberts (1980), 448 U.S. 56. However, the United States Supreme Court revisited this issue inCrawford v. Washington (2004), 541 U.S. 36. Subsequent to theCrawford decision, the initial inquiry now concerns whether the hearsay statement is "testimonial." State v. Stahl, 2006-Ohio-5482, at ¶ 16, quoting Crawford v. Washington, 541 U.S. at 68.
 {¶ 23} Reuschling relies on the Third Appellate District's decision inState v. Smith to support his position. State v. Smith, 2006-Ohio-1661. In Smith, the Third District held that an analyst's report prepared pursuant to R.C. 2925.51 is testimonial and, therefore, a defendant has a right to confront the expert. Id. at ¶ 26. However, the court held that a defendant may waive that right, provided "the defendant [is]fully informed as to the consequences of the waiver." (Emphasis in original.) Id. at ¶ 21. The court held that a written warning contained in the report itself is sufficient to conclude that a defendant's failure to demand the testimony of the expert indicates he or she is waiving the right to confront the witness, provided the warning informs the defendant that the "report will be used as prima facie evidence against" him or her if the testimony of the expert is not demanded. Id. at ¶ 26. In Smith, the Third District reversed the defendant's conviction and remanded the matter for a new trial because the court concluded that the warning contained in the report was not sufficient to adequately warn the defendant that he was waiving his right to confront the expert and, *Page 9 
thus, the defendant did not waive his Sixth Amendment right to confront the witness. Id. at ¶ 23-24, 27, and 39.
 {¶ 24} Other Ohio courts have previously addressed this issue and, for various reasons, have held that the defendant's rights to confrontation were not violated. See State v. Moore, 8th Dist. No. 85828,2006-Ohio-277, at ¶ 25-29; State v. Clark, 11th Dist. Nos. 2001-P-0031, 2001-P-0033, 2001-P-0034, 2001-P-0057, and 2001-P-0058, 2004-Ohio-334, at ¶ 65-69; State v. Fleming (May 10, 1983), 10th Dist. No. 82AP-813, 1983 Ohio App. LEXIS 15683, at *7-9; State v. Shields (Nov. 1983), 5th Dist. No. CA-83-3, 1983 Ohio App. LEXIS 14322, at *3-4; State v.Smith (Sept. 23, 1981), 9th Dist. No. 1731, 1981 Ohio App. LEXIS 11150, at *6-10. All of these cases were decided prior to the Third District's decision in State v. Smith, and all but State v. Moore were decided prior to the United States Supreme Court's opinion in Crawford v.Washington.
 {¶ 25} In 1981, in State v. Smith, the Ninth Appellate District conducted a significant analysis of R.C. 2925.51 and its impact on the Confrontation Clause. State v. Smith, 1981 Ohio App. LEXIS 11150, at *6-10. The court ultimately concluded that R.C. 2925.51 did not violate the Confrontation Clause. However, we note the Ninth District's analysis was based on the "reliability" of the report in an analysis pursuant toOhio v. Roberts. Id. at *8.
 {¶ 26} In State v. Moore and State v. Clark, the courts conducted a minimal analysis of this issue, summarily concluding that the defendant's failure to request a copy of the expert's report under R.C.2925.51(C) precluded a finding that the defendant's confrontation rights were violated. State v. Clark, 2004-Ohio-334, at ¶ 66-68; State v.Moore, 2006-Ohio-277, at ¶ 28. *Page 10 
 {¶ 27} We will conduct an independent analysis of whether the admission of the analyst's report violated Reuschling's Confrontation Clause rights.
 {¶ 28} We initially need to determine whether the report in this matter was testimonial. The Crawford Court declined to adopt a formal definition of "testimonial." State v. Stahl, 2006-Ohio-5482, at ¶ 19. However, the Supreme Court of Ohio noted that the Crawford Court did provide three examples of a testimonial statement, including: (1) in-court testimony or its functional equivalent, including affidavits; (2) statements contained in formal testimonial materials, including depositions and affidavits; and (3) statements made where an objective declarant would reasonably believe the statement would be available to be used at a subsequent trial. (Secondary citations omitted.) Id., quoting Crawford v. Washington, 541 U.S. at 51-52.
 {¶ 29} In this matter, an affidavit was attached to the report pursuant to R.C. 2925.51(A). Also, the purpose of the report was to provide "prima-facie evidence of the content, identity, and weight" of the controlled substance. Thus, the report, including the attached affidavit, was specifically intended to be used in a subsequent criminal trial. Accordingly, laboratory reports such as the one admitted in this matter meet all three of the examples of a testimonial statement given in Crawford. Thus, we conclude, as did the Third Appellate District, that such reports are testimonial in nature. See State v. Smith,2006-Ohio-1661, at ¶ 26.
 {¶ 30} Next, we address the issue of whether a defendant may waive the confrontation rights. The Third District held that "a criminal defendant can waive his confrontation rights by failing to demand the testimony of the laboratory technicians under R.C. 2925.51(C)." Id. at ¶ 18. Other courts have also held that a defendant can *Page 11 
waive his confrontation rights by failing to demand the testimony of the analyst. See State v. Fleming, 1983 Ohio App. LEXIS 15683, at *9;State v. Shields, 1983 Ohio App. LEXIS 14322, at *4.
 {¶ 31} In its analysis, the Third District held that the waiver of confrontation rights pursuant to R.C. 2925.51 "must be made knowingly, intelligently, and voluntarily." State v. Smith, 2006-Ohio-1661, at ¶ 21, citing Boykin v. Alabama (1969), 395 U.S. 238 and State v.Ballard (1981), 66 Ohio St.2d 473. The cases cited by the Third District, Boykin v. Alabama and State v. Ballard, concern the waiver of the right to confront witnesses under an analysis of whether a defendant entered a valid guilty plea. Boykin v. Alabama, 395 U.S. at 243.State v. Ballard, 66 Ohio St.2d at 478-480. There is a procedural difference between entering a guilty plea and failing to demand the testimony of an expert pursuant to R.C. 2925.51. However, the net effect of both occurrences is identical, in that the defendant gives up his constitutional right to confront witnesses. Thus, we agree with the Third District's conclusion that such a waiver must be made knowingly, voluntarily, and intelligently.
 {¶ 32} In State v. Smith, the Third District found the language in the warning contained in the report was not sufficient to adequately inform the defendant of the rights he was waiving. State v. Smith,2006-Ohio-1661, at ¶ 23-24. The court held, for a waiver to be sufficient, it must inform the defendant "that failure to make the demand [of the testimony of the person who prepared the report] will permit the laboratory report to serve as prima facie evidence of the conclusions in the report without the testimony of the technician." Id. at ¶ 24. *Page 12 
 {¶ 33} The Third District concluded that "the purpose of serving the report on the defendant" under R.C. 2925.51(B) is to inform the defendant that the report will be admissible against him without the testimony of the analyst, unless that testimony is demanded. Id. at ¶ 23. In addition, we note the Tenth Appellate District explained "[a]t [no] time did the defendant claim that he misunderstood his responsibility pursuant to [R.C. 2925.51] to request the testimony of the analyst." State v. Fleming, 1983 Ohio App. LEXIS 15683, at *9. The concern we have with this approach is the assumption that the defendant personally received a copy of the report. R.C. 2925.51(B) requires that the state serve the report "on the attorney of record for the accused, or on the accused if the accused has no attorney." Thus, the appropriate question is whether an attorney can waive confrontation rights on behalf of his or her client. For the following reasons, we answer this question in the negative.
 {¶ 34} Permitting an attorney to make a limited waiver of a defendant's constitutional rights where there is a statute or rule providing that inaction will constitute waiver is not unprecedented. Under Crim.R. 23, a defendant in a "petty offense" case only receives a jury trial if he demands one. Ohio courts have upheld this rule requiring action on the part of the defendant's attorney in order to exercise the defendant's constitutional right to a jury trial. SeeMiddletown v. Flinchum (Dec. 18, 2000), 12th Dist. No. CA99-11-193, 2000 Ohio App. LEXIS 5908, at *15, citing Mentor v. Giordano (1967),9 Ohio St.2d 140, paragraph one of the syllabus. However, we note that Crim.R. 5(A)(5) requires the trial court to inform the defendant at the initial hearing of the necessity to make a demand for a jury trial in petty offense cases. Thus, the *Page 13 
defendant is put on notice that he needs to take affirmative action or his right to a jury trial will be waived.
 {¶ 35} In R.C. 2925.51, there is no safeguard similar to that in Crim.R. 5(A)(5) to ensure that a defendant actually receives notice about the existence of the report and his right to demand the testimony of the analyst. The statute specifically states that the report is to be served on the accused's attorney, if he or she has one. R.C. 2925.51
(B).
 {¶ 36} It could be argued that the procedures in R.C. 2925.51 are akin to the parties entering into a stipulation. However, a stipulation is binding on a criminal defendant if it is made by the defendant or by his or her attorney in the defendant's presence during the trial. State v.Bryant, 8th Dist. No. 79841, 2002-Ohio-2136, at ¶ 37, citing State v.Robbins (1964), 176 Ohio St. 362, paragraph two of the syllabus.
 {¶ 37} We agree with the Third District's conclusion that a defendant's waiver of his or her confrontation rights under R.C. 2925.51
must be made knowingly, intelligently, and voluntarily. State v.Smith, 2006-Ohio-1661, at ¶ 23-24. However, we disagree with that court's conclusion that such waiver can be accomplished by a warning contained in the report, which is only served on the defendant's attorney. The record needs to affirmatively demonstrate that the defendant knowingly, intelligently, and voluntarily waived his constitutional right to confront the laboratory analyst.
 {¶ 38} In this matter, Reuschling waived his right to confront the laboratory analyst. This occurred as a result of Reuschling's trial strategy. His trial strategy regarding the possession of methamphetamine charge was to admit the substance in his mouth was methamphetamine, but to argue that he was permitted to possess the substance because he was working with law enforcement in an undercover operation. *Page 14 
Reuschling personally agreed to this trial strategy. At trial, Reuschling admitted the substance in his mouth was methamphetamine. On direct examination, Reuschling testified as follows:
 {¶ 39} "Q. Was — was there any illegal substances in the vehicle?
 {¶ 40} "A. Yes.
 {¶ 41} "Q. Okay. And what was that?
 {¶ 42} "A. 13.98 grams of methamphetamines.
 {¶ 43} " * * *
 {¶ 44} "Q. * * * Where was that methamphetamine?
 {¶ 45} "A. In my mouth.
 {¶ 46} "Q. How did it get in your mouth?
 {¶ 47} "A. I put it there."
 {¶ 48} Reuschling waived his right to confront the analyst as evidenced by his overall trial strategy. By admitting the substance in his mouth was the exact amount of methamphetamine as the report indicates, he effectively stipulated to the identity and amount of the substance.
 {¶ 49} Reuschling's first assignment of error is without merit.
 {¶ 50} Reuschling's second assignment of error is:
 {¶ 51} "The trial court erred when it denied appellant's motion for acquittal pursuant to Crim.R. 29(A)."
 {¶ 52} When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the *Page 15 
essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 53} Methamphetamine is a schedule II controlled substance. See R.C.2925.01(A), R.C. 3719.01(BB), and R.C. 3719.41(C)(2). In addition, the bulk amount for methamphetamine is "an amount equal to or exceeding three grams." R.C. 2925.01(D)(g). Reuschling was charged with possession of methamphetamine, in violation of R.C. 2925.11, which provides, in part:
 {¶ 54} "(A) No person shall knowingly obtain, possess, or use a controlled substance.
 {¶ 55} " * * *
 {¶ 56} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 57} "(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II * * * whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:
 {¶ 58} "(a) Except as otherwise provided * * * aggravated possession of drugs is a felony of the fifth degree[.]
 {¶ 59} "(b) If the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, aggravated possession of drugs is a felony of the third degree, and there is a presumption for a prison term for the offense." *Page 16 
 {¶ 60} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C.2901.22(B).
 {¶ 61} Reuschling initially argues that there was insufficient evidence regarding his possession of methamphetamine conviction. His argument is based on his assumption that the analyst's laboratory report is inadmissible. However, based on the reasoning in our analysis of Reuschling's first assignment of error, the laboratory report was admissible. The report indicates the substance in Reuschling's mouth was 13.97 grams of methamphetamine.
 {¶ 62} The state presented sufficient evidence to support Reuschling's conviction for possession of methamphetamine.
 {¶ 63} Reuschling was charged with tampering with evidence, in violation of R.C. 2921.12, which provides, in part:
 {¶ 64} "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
 {¶ 65} "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;
 {¶ 66} " * * *
 {¶ 67} "(B) Whoever violates this section is guilty of tampering with evidence, a felony of the third degree." *Page 17 
 {¶ 68} Reuschling argues that the baggie in his mouth made the existence of the methamphetamine "more obvious" to law enforcement. We disagree. Sergeant Allen was able to notice the baggie of drugs in Reuschling's mouth due to Reuschling's speech and the fact that his cheek appeared swollen. However, the fact that Reuschling placed the contraband in his mouth, when viewed in a light most favorable to the prosecution, is consistent with "concealing" the item from law enforcement. The fact that Reuschling's concealment efforts were ultimately unsuccessful is irrelevant for the purpose of this analysis.
 {¶ 69} The state presented sufficient evidence to support a conviction for tampering with evidence.
 {¶ 70} Reuschling was charged with illegal manufacture of drugs, in violation of R.C. 2925.04, which provides, in part:
 {¶ 71} "(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.
 {¶ 72} " * * *
 {¶ 73} "(C) (1) Whoever commits a violation of division (A) of this section that involves any drug other than marihuana is guilty of illegal manufacture of drugs. * * *
 {¶ 74} (3) If the drug involved in the violation of division (A) of this section is methamphetamine, the penalty for the violation shall be determined as follows:
 {¶ 75} (a) Except as otherwise provided in division (C)(3)(b) of this section, if the drug involved in the violation is methamphetamine, illegal manufacture of drugs is a felony of the second degree, and, subject to division (E) of this section, the court shall *Page 18 
impose a mandatory prison term on the offender determined in accordance with this division. * * *
 {¶ 76} (b) If the drug involved in the violation is methamphetamine and if the offense was committed in the vicinity of a juvenile, in the vicinity of a school, or on public premises, illegal manufacture of drugs is a felony of the first degree, and, subject to division (E) of this section, the court shall impose a mandatory prison term on the offender determined in accordance with this division."
 {¶ 77} Reuschling was also charged with one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041, which provides:
 {¶ 78} "(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.
 {¶ 79} "(B) In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section."
 {¶ 80} In regard to his convictions on count four and five, Reuschling argues that the evidence only demonstrates he was present and that methamphetamine was being produced. He contends the evidence only describes him as a bystander. The fact that *Page 19 
Reuschling was one of only two individuals in the basement of a residence, that neither of them owned, at 5:30 a.m., and that methamphetamine was being produced in that same basement, when viewed in a light most favorable to the state, is sufficient to support Reuschling's convictions on counts four and five. See, e.g., State v.Hayslip, 4th Dist. No. 05CA812, 2006-Ohio-3120, at ¶ 9.
 {¶ 81} In regard to count four, Reuschling argues there was insufficient evidence the crime was committed in the vicinity of a juvenile. Reuschling acknowledges there was evidence presented that Lomas' minor son was asleep in a bedroom upstairs. However, he argues there was no evidence presented regarding the distance between the location of the minor and the activity in the basement. Binns described the residence as a three-bedroom house with a basement. The evidence indicated that the minor child was in the same house as the methamphetamine production. For purposes of a sufficiency of the evidence analysis, this qualifies as "in the vicinity" of the illegal activity.
 {¶ 82} Also, Reuschling argues there was no evidence presented that he knew the minor was in the house. However, Binns testified that one of the individuals in the basement stated they were working on a three-wheeler. He further testified that Lomas' son owned a three-wheeler. Also, Binns testified that he did not know the individuals in his residence. The inference that arises is that Reuschling was an acquaintance of Lomas. This evidence, when taken together and viewed in a light most favorable to the prosecution, is sufficient to show that Reuschling knew a minor was in the residence.
 {¶ 83} Reuschling's convictions were supported by sufficient evidence. Thus, the trial court did not err in denying his motion for acquittal. *Page 20 
 {¶ 84} Reuschling's second assignment of error is without merit.
 {¶ 85} Reuschling's third assignment of error is:
 {¶ 86} "Appellant was afforded ineffective assistance of counsel."
 {¶ 87} In State v. Bradley, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth inStrickland v. Washington (1984), 466 U.S. 668. Moreover, "`a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, * * * that course should be followed.'" Id. at 143, quotingStrickland, 466 U.S. at 697.
 {¶ 88} First, we address Reuschling's argument that his trial counsel was ineffective for failing to object to the admission of the analyst's report on the ground that it violated the Confrontation Clause.
 {¶ 89} "The Supreme Court of Ohio has held that trial strategy decisions should not be second-guessed and that `"a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."`" State v. Ogletree, 11th Dist. No. 2005-P-0040, 2006-Ohio-6107, at ¶ 64, quoting State v. Mason (1998),82 Ohio St.3d 144, 157-158, quoting Strickland v. Washington,466 U.S. at 689. *Page 21 
 {¶ 90} As noted in our analysis of Reuschling's first assignment of error, it was a trial-strategy decision not to object to the admission of the laboratory report. The overall trial strategy was to admit that the substance was methamphetamine, but to argue that Reuschling had permission to possess it due to his status as an informant working with law enforcement. Since it was a trial-strategy decision not to make the objection, we cannot say Reuschling's trial counsel's performance was deficient.
 {¶ 91} Next, we address Reuschling's assertion that his trial counsel was ineffective for failing to move to sever the charges.
 {¶ 92} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character * * *." Crim.R. 8(A). Joinder of offenses is generally liberally permitted in order to conserve judicial resources, prevent incongruous results in successive trials, or to diminish inconvenience to witnesses. State v. Torres (1981), 66 Ohio St.2d 340,343.
 {¶ 93} However, pursuant to Crim.R. 14, separate trials may be necessary to prevent prejudice. Crim.R. 14 reads, in pertinent part:
 {¶ 94} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant *Page 22 
to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."
 {¶ 95} Reuschling has not shown how the results of the trial would have been different had the different offenses been tried separately. It is important to note that the jury found Reuschling not guilty on count three. This demonstrates the jury was able to separate its analysis of the individual charges and impartially decide each count. Since Reuschling has not demonstrated that the results of the trial would have been different if the counts were severed, he has not advanced a meritorious claim of ineffective assistance of counsel on the severance issue.
 {¶ 96} Reuschling's third assignment of error is without merit.
 {¶ 97} Reuschling's fourth assignment of error is:
 {¶ 98} "The conviction[s] [are] against the manifest weight of the evidence."
 {¶ 99} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 100} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387. *Page 23 
 {¶ 101} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 102} In this matter, Reuschling testified that he was permitted to have the methamphetamine in his mouth because he retrieved the substance as part of an undercover operation and was assisting law enforcement. However, he acknowledged that he was not working on a specific assignment that day. In addition, no official testified to confirm Reuschling's contention that he was acting as part of an undercover operation.
 {¶ 103} In regard to the incident on March 29, 2006, Reuschling testified he was at Binns' residence to retrieve a suitcase and that he was not involved in the production of methamphetamine. However, Binns testified that Reuschling was in the basement of his house. Officials from the Ashtabula County Sheriffs Office investigated the situation and opined that methamphetamine was being produced in the basement that morning.
 {¶ 104} The jury did not lose its way or create a manifest miscarriage of justice by finding Reuschling guilty on counts one, two, four, and five.
 {¶ 105} Reuschling's fourth assignment of error is without merit.
 {¶ 106} The judgment of the trial court is affirmed.
MARY JANE TRAPP, J., concurs,
DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion. *Page 24