OPINION
{¶ 1} Defendant-Appellant Darlene J. Fulk ("Fulk") appeals from the May 23, 2007 Judgment Entry of the Court of Common Pleas, Van Wert County, Ohio sentencing her to 12 months in prison for her conviction of Trafficking in Drugs, a felony of the fifth degree in violation of Ohio Revised Code section 2925.03(A)(1) and (C)(2)(a) and 12 months in prison for her violation of community control.[1]
 {¶ 2} On December 8, 2006 a Van Wert County Grand Jury indicted Fulk on two counts of Trafficking in Drugs, both felonies of the fifth degree in violation of R.C. 2925.03(A)(1) and (C)(2)(a). Count 1 alleged that "on or about the 18th day of July, 2006 . . . Fulk did knowingly sell or offer to sell the Schedule III controlled substance Hydrocodone." Count 2 alleged that "on or about the 27th *Page 3 
day of July, 2006 . . . Fulk did knowingly sell or offer to sell the Schedule IV controlled substance Alprazolam." Both counts of the indictment also contained the specification that Fulk had an interest in a "Chevrolet Lumina . . . that was used directly or indirectly in the commission or to facilitate the commission of the felony drug abuse offense or act."
 {¶ 3} This matter proceeded to a two day jury trial commencing on May 1, 2007. At the close of the State's case, Fulk moved for a Crim.R. 29 motion for acquittal. The trial court denied Fulk's Crim.R. 29 motion with respect to both counts of Trafficking in Drugs, but granted Fulk's motion with respect to the vehicle specifications contained in both counts of the indictment. The matter proceeded to Fulk's case in chief. At the close of all the evidence, the jury found Fulk not guilty of Trafficking in Drugs as contained in Count 1 of the indictment and guilty of Trafficking in Drugs as contained in Count 2 of the indictment.
 {¶ 4} On May 7, 2007 the State filed an affidavit from the Van Wert County Adult Probation Department alleging that as a result of the jury verdict of guilty on Count 2 of the indictment, Fulk violated the terms and conditions of her community control set forth in Case No. 04-11-138.
 {¶ 5} On May 21, 2007 Fulk appeared for her sentencing hearing in Case No. 06-12-225 for her conviction of Trafficking in Drugs. At this hearing the court also addressed Fulk's violation of community control in Case No. 04-11-138 *Page 4 
wherein the trial court found that Fulk had previously been convicted of Attempted Retaliation, a felony of the fourth degree in violation of R.C. 2923.02(A)/2921.05(A), and placed on three years community control. Based upon the jury's guilty verdict on the charge of Trafficking in Drugs, Fulk admitted to the community control violation in Case No. 04-11-138.
 {¶ 6} The trial court sentenced Fulk to 12 months in prison in Case No. CR-06-12-225 for her conviction of Trafficking in Drugs, and 12 months in prison in Case No. CR-04-11-138 for her community control violation, to be served concurrently to each other. Fulk was granted 92 days total jail time credit.
 {¶ 7} Fulk now appeals, asserting three assignments of error.
 ASSIGNMENT OF ERROR NO. 1 APPELLANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND SHE WAS PREJUDICED AS A RESULT.
 ASSIGNMENT OF ERROR NO. 2 THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR NO. 3 THE TRIAL COURT ERRED WHEN IT IMPOSED MORE THAN THE MINIMUM SENTENCE.
 Assignment of Error No. 1 {¶ 8} In her first assignment of error, Fulk alleges that her trial counsel was ineffective because he failed to object to the lack of proper foundation for the *Page 5 
State's exhibits admitted into evidence during trial and because her counsel did not request that the two counts of the indictment be tried separately.
 {¶ 9} As a preliminary matter, we note that Fulk's first assignment of error may only be reviewed as plain error because this issue was never raised before the trial court. See State v. Levally, 3rd
Dist. No. 14-05-28, 2006-Ohio-1882 citing State v. Comen (1990),50 Ohio St.3d 206, 211. Pursuant to Crim.R. 52(B), plain error requires that there be an obvious defect in the trial court proceedings that affects substantial rights. Id. citing State v. Barnes (2002), 94 Ohio St.3d 21,27; State v. Long (1978), 53 Ohio St.2d 91, at paragraph two of the syllabus. Thus, "[o]nly extraordinary circumstances and the prevention of a miscarriage of justice warrant a finding of plain error." State v.Brown, 3rd Dist. No. 8-02-09, 2002-Ohio-4755 citingLong, supra at paragraph three of the syllabus. Furthermore, we note that a trial court is provided with broad discretion in admitting evidence. State v. Williams (1982), 7 Ohio App.3d 160, 162,454 N.E.2d 1334.
 {¶ 10} The Supreme Court of Ohio has adopted a two-part test for determining claims of ineffective assistance of counsel in criminal prosecutions. See State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, at paragraph two of the syllabus, (following Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct.2052, 80 L.Ed.2d 674). Under this test, "[Appellant] must first show that his attorney's performance `fell below an objective standard of reasonableness,' and *Page 6 
must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."' State v. Jones, 3rd Dist. No. 02-2000-07, 2000-Ohio-1879 quoting Strickland, 466 U.S. at 688-694. As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley,42 Ohio St.3d at 142. The second prong regarding reasonable probability requires a probability sufficient to undermine the confidence in the outcome of the trial. Id.
 {¶ 11} We note that Fulk bears the burden of proof on the issue of counsel's ineffectiveness, since in Ohio a properly licensed attorney is presumed competent. State v. Calhoun (1999), 86 Ohio St.3d 279, 289,714 N.E.2d 905. Moreover, Fulk must overcome a strong presumption that the challenged action constitutes trial strategy. State v. Carter (1995),72 Ohio St.3d 545, 558, 651 N.E.2d 905. Therefore, in reviewing Fulk's counsel's performance, we must accord deference to counsel's trial tactics and cannot examine counsel's choices through hindsight. SeeStrickland, 466 U.S. at 689.
 {¶ 12} In this case, Fulk alleges that she was denied effective assistance of counsel because her counsel failed to object to the lack of proper foundation for the State's Exhibits 1, 2, 3, and 4.
 Exhibits 1 and 2 *Page 7 {¶ 13} Exhibit 1 is a tape recording of the July 18, 2006 transaction as alleged in Count 1 of the indictment. Exhibit 2 is a tape recording of the July 27, 2006 transaction as alleged in Count 2 of the indictment. With respect to these exhibits, Fulk argues that there was no testimony presented to establish that these tapes were true and accurate recordings of the events that took place or that the tapes were authentic. Additionally, Fulk argues that the State's witnesses did not identify the voices on the tapes. Fulk argues that this evidence was prejudicial and had it been excluded, there would have been no basis for a conviction of the trafficking offense.
 {¶ 14} Initially, we note that the Ohio Supreme Court has determined that "[t]o be admissible, a tape recording must be `authentic, accurate and trustworthy.'" State v. Coleman (1999), 85 Ohio St.3d 129, 141,707 N.E.2d 476, quoting State v. Rogan (1994), 94 Ohio App.3d 140,640 N.E.2d 535. Additionally, Evid.R. 901 governs the requirement of authentication or identification of evidence and provides, in relevant part, as follows:
 (A) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 (B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule: * * *
 (5) Voice identification. Identification of a voice, whether heard firsthand or through mechanical or electronic *Page 8 transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker. (Emphasis in original).
 {¶ 15} "Voice identification pursuant to Rule 901(B)(5) may be offered into evidence in one of several manners. A witness may testify as to his opinion that a voice he heard on a particular occasion was that of a given person. Alternatively, the evidence may consist of a tape recording that is played in the courtroom, accompanied by testimony of a witness who identifies the voice on the recording." State v. Reno, 4th Dist. No. 04CA2759, 2005-Ohio-1294 citing State v.Nelson (Nov. 21, 1997), 2nd Dist. No. 96CA134, unreported; see also, State v. Gore (Feb. 18, 1997), 10th
Dist. No. 96APC05-606, unreported.
 {¶ 16} Our review of the trial transcript reveals that the State questioned Detective Hyitt ("Hyitt") about the transactions at issue in the present case prior to the introduction of Exhibits 1 and 2. Hyitt testified that he was directly involved in the transactions occurring on July 18 and July 27 and that he tape recorded those transactions. When handed State's Exhibits 1 and 2, Hyitt testified that he recognized these exhibits as "the tapes of the two buys we are talking about here today" and that he and Detective Swander were directly involved in making both of the tapes. Hyitt also testified that he was listening while the July 27, 2006 transaction (as contained in Exhibit 2) took place and that he heard a voice he recognized as Fulk's on the tape. *Page 9 
 {¶ 17} The State also questioned James Reynolds ("Reynolds"), the confidential informant used in this case, regarding the transactions at issue in the present case prior to the introduction of Exhibits 1 and 2. Reynolds testified that he recalled the transaction that took place between himself and Fulk on July 18, 2006 and testified that he was wearing a wire or a transmitter during the July 18 and the July 27 transactions. The State then played the audiotape of Exhibit 1. At the conclusion of the audiotape Reynolds testified that he recalled those events, that he was the person who called Fulk, and that it was Fulk's voice on the tape.
{¶ l8} Reynolds also testified regarding the transaction that took place between himself and Fulk on July 27, 2006 and testified that the transaction was set up by a telephone call again. The State then played the audiotape of Exhibit 2. At the conclusion of the audiotape Reynolds testified that he talked to Fulk and that it was "clearly" her voice heard on the phone. Reynolds testified that Fulk came to his house a few minutes after the phone call, that she talked to him, and that the exchange took place between them. Reynolds also testified that at the end of the tape he went into the van where Detectives Hyitt and Swander were waiting and that he handed the tablets he received from Fulk over to the detectives.
{¶ l9} The State also questioned Detective Swander ("Swander") who testified that he was directly involved in the transactions occurring on July 18 and July 27. Swander testified that he was responsible for taking notes during the July *Page 10 
18 transaction based on "listening to the tape as it comes through the receiver" and that he kept track and made a summary of what was "going on over the tape."
 {¶ 20} However, we note that neither of the detectives specifically testified that the tapes were true and accurate recordings of the events that took place on July 18 and July 27, 2006. Additionally, neither detective nor Reynolds testified that the tapes were true and accurate reflections of the conversations between Fulk and the confidential informant as the detectives observed them on the specified dates.
 {¶ 21} We find that this was not entirely an adequate foundation for the use of the tapes. Nevertheless, in terms of the ineffective counsel issue, Fulk's counsel's failure to object may have been trial strategy as the tapes themselves do not reveal any direct criminal activity on Fulk's part.
 {¶ 22} Furthermore, even if Fulk's trial counsel had objected to the admission of Exhibits 1 and 2 based upon a lack of proper foundation, it is reasonable to assume that the State would have been provided an opportunity to cure its defect in presentation or foundation by asking additional questions of the officers, and there is no indication in the record that they would have been unable to do so. Therefore, the failure to object to the introduction of these exhibits, even if it can be considered unreasonable conduct on the part of Fulk's trial counsel, does not amount to ineffective assistance because there is not a reasonable *Page 11 
probability that the outcome of the trial would have been different. SeeStrickland, 466 U.S. at 688, 694. Accordingly, we do not find that Fulk's counsel was ineffective for failing to object to the admission of Exhibits 1 and 2.
 Exhibits 3 and 4 {¶ 23} Exhibits 3 and 4 are the laboratory reports from the Bureau of Criminal Identification and Investigation ("BCII") establishing the controlled substances to be Alprazolam (Exhibit 3) and Hydrocodone (Exhibit 4).
 {¶ 24} R.C. 2925.51 governs the use of laboratory reports as prima-facie evidence of the content, weight, and identity of substances and the rights of the accused. This section provides, in relevant part, as follows:
 (A) In any criminal prosecution for a violation of this chapter . . . a laboratory report from the bureau of criminal identification and investigation . . . primarily for the purpose of providing scientific services to law enforcement agencies and signed by the person performing the analysis, stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance, and that it contains any amount of a controlled substance and the number and description of unit dosages, is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance. * * *
 Attached to that report shall be a copy of a notarized statement by the signer of the report giving the name of the signer and stating that the signer is an employee of the laboratory issuing the report and that performing the analysis is a part of the signer's regular duties, and giving an outline of the signer's education, training, and experience for performing an analysis of materials included under this *Page 12 section. The signer shall attest that scientifically accepted tests were performed with due caution, and that the evidence was handled in accordance with established and accepted procedures while in the custody of the laboratory.
 The prosecuting attorney shall serve a copy of the report on the attorney of record for the accused . . . prior to any proceeding in which the report is to be used against the accused. . .
 The report shall not be prima facie evidence of the contents, identity, and weight of the substance if the accused or the accused's attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report. * * *
 Any report issued for use under this section shall contain notice of the right of the accused to demand, and the manner in which the accused shall demand, the testimony of the person signing the report.
 {¶ 25} Thus, R.C. 2925.51 permits the prosecution to submit a laboratory report as evidence in drug cases, and the statute requires the prosecution to serve a copy of the report on the defendant. Under the statute, the laboratory reports will serve as prima facie evidence of the identity and weight of the controlled substances unless the defendant demands the testimony of the person who signed the report within seven days of receiving the prosecutor's notice of intent to submit the report. R.C. 2925.51(C). (Emphasis added).
 {¶ 26} In the present case, Exhibits 3 and 4 were introduced and admitted into evidence at trial by the State without any objection by Fulk. However, on *Page 13 
appeal Fulk argues that there was no foundation submitted for the admission of these exhibits to establish their accuracy, authenticity, and relevance. Specifically, Fulk argues that although the parties stipulated that Hydrocodone was a schedule III controlled substance and that Alprazolam was a schedule IV controlled substance, there was no stipulation that the drugs collected on July 18 and July 27, 2006 were, in fact, these two substances. Accordingly, Fulk alleges that the State was still required to prove that the drugs collected were Alprazolam and Hydrocodone.
 {¶ 27} Prior to addressing the merits of Fulk's argument regarding Exhibits 3 and 4, we must address the nature of the discovery process in the present action.
 {¶ 28} On March 19, 2007 Fulk's attorney filed a request for discovery pursuant to Crim.R.16(B) requesting, in relevant part "[a]ny results or reports of . . . scientific tests or experiments, made in connection with these particular cases . . ." On May 1, 2007[2] Fulk's attorney and the assistant prosecuting attorney filed an "information packet receipt" which read as follows:
 The undersigned does hereby acknowledge receipt of the Discovery Information Packet in the above captioned matter. The undersigned further agrees that his or her act of accepting said Discovery Information Packet constitutes a demand for discovery from the Prosecuting Attorney and further agrees to furnish the Prosecuting Attorney all discoverable materials pursuant to Criminal Rule 16(C). *Page 14 
However, we note that actual copies of what was exchanged in discovery are not included in the record before this court. Accordingly, we are unable to determine whether Fulk's counsel was provided with a copy of the BCII reports (Exhibits 3 and 4) establishing the controlled substances at issue in this case to be Alprazolam and Hydrocodone.
 {¶ 29} On May 1, 2007 Fulk, her attorney, and the assistant prosecuting attorney signed and entered into a stipulation regarding the two controlled substances at issue in the present case. This stipulation read as follows:
 The State of Ohio and the Defendant hereby stipulate that the chain of custody of the two controlled substances, hydrocodone and alprazolam, has been maintained. The State of Ohio and the Defendant hereby stipulate that hydrocodone is a schedule III controlled substance and alprazolam is a schedule IV controlled substance.
However, we note that this stipulation also does not provide whether or not Fulk's counsel was provided with copies of the BCII reports.
 {¶ 30} Exhibits 3 and 4 on their face appear to comply with the minimal requirements of R.C. 2925.51(D) by informing Fulk of the right to demand the BCII technician's testimony. Following the laboratory reports and the attached affidavits of the laboratory technician who performed the tests, the following notification was typed at the bottom right corner of each affidavit:
 OHIO REVISED CODE, 2925.51(C)(D) *Page 15 THE ACCUSED HAS THE RIGHT TO DEMAND THE TESTIMONY OF THE NAMED ANALYST ABOVE BY SERVING SUCH DEMAND UPON THE PROSECUTING ATTORNEY WITHIN SEVEN (7) DAYS OF THE ACCUSED'S OR HIS ATTORNEY'S RECEIPT OF THE LABORATORY REPORT.
 {¶ 31} However, based upon our holding in State v. Smith, 3rd Dist. No. 1-05-39, 2006-Ohio-1661, we find that this language alone is not adequate to fully inform Fulk of the constitutional rights she might be waiving under the statute by failing to demand the technician's testimony.
 {¶ 32} In Smith, this court found that the purpose of serving the report on the defendant and notifying him that he has a right to demand testimony is to inform him that the report will be offered into evidence against him without such testimony unless he makes such a demand.Smith, 2006-Ohio-1661 at ¶ 23. Additionally, this court held as follows:
 The laboratory report in question is testimonial evidence under the Supreme Court's decision in Crawford v. Washington (2004), 541 U.S.3d, 124 S.Ct.1354, 158 L.Ed.2d 177, and therefore Smith has a right to confront the laboratory technician who "testifies" through the report. In the ordinary case the State can utilize the evidentiary procedures outlined in R.C. 2925.51 to submit the laboratory report as evidence without the accompanying testimony, and if the defendant does not demand the testimony he or she waives the right to confrontation. The provisions in the statute, particularly the requirements in subsections (A) and (B), sufficiently protect the defendant's Confrontation Clause rights. However, in order to obtain a valid waiver of those rights the prosecution must go beyond the minimal demand requirements outlined in R.C. 2925.51(D). The prosecution must fully notify the defendant of the effect of his failing to make a *Page 16 demand, which we hold necessarily includes informing the defendant that the report will be used a prima facie evidence against him as specified in the statute.
Smith, supra at ¶ 26.
 {¶ 33} In the present case, the State's notification, though technically compliant with R.C. 2925.51(D), makes no mention of the consequences of the waiver set forth in R.C. 2925.51; namely that failure to make the demand will permit the laboratory report to serve as prima facie evidence of the conclusions in the report without the testimony of the technician. See Smith, supra at ¶ 24. Therefore, this notice is insufficient to fully inform Fulk of the consequences of failing to demand the witness's testimony, and without such notice Fulk cannot be said to have knowingly, intelligently, and voluntarily waived his constitutional rights. See Id. Nor can defense counsel be said to be ineffective for failing to make a pretrial demand for the testimony in light of the deficient notice on the affidavit.
 {¶ 34} However, Fulk's argument with respect to Exhibits 3 and 4 is that her counsel was ineffective for failing to object to the lack of proper foundation for these exhibits; not just that the trial court erred in admitting the exhibits.
 {¶ 35} Upon review of the record, and being mindful of the incomplete record of discovery before this court, we find that Fulk's counsel's apparent failure to demand the testimony of the BCII technician prior to trial or otherwise *Page 17 
object to the foundation laid for the introduction of the reports at trial could well have been trial strategy. Defense attorneys commonly do not wish to have a chemist present to testify at trial in order to de-emphasize the nature or amount of the drugs in front of the jury. Similarly, defense counsel may not want to be seen as objecting unnecessarily where the drug analysis is not relevant to the defendant's claim that she was unaware of the drugs or had no possession of them. In any event, we will not presume ineffectiveness or that these strategies were not legitimate solely from a failure to object at trial. Nor can we presume that had defense counsel made a pretrial demand for the testimony of the chemist, the outcome of the trial would have been different. See Strickland, 466 U.S. at 688, 694. Accordingly, on this record we cannot find that Fulk's counsel was ineffective for failing to object to the admission of Exhibits 3 and 4.
 {¶ 36} As for Fulk's specific argument that the drugs analyzed in the reports were not sufficiently linked at trial to the exhibits submitted to the BCII for analysis from Fulk's transactions with Reynolds, we believe the testimony of the detectives sufficiently established those links and identified the proper exhibits. Specifically, Detective Swander testified that Exhibit 5 was the four tablets he received from Reynolds on July 27, 2006 after the transaction between Reynolds and Fulk. Swander testified that once he received those tablets he secured them in a package and locked it in the evidence lockers. Swander testified that this *Page 18 
evidence was sent of to BCII and that he received results back from that sample. Specifically, Swander testified that Exhibit 3 was the BCII lab report for the sample that was contained in Exhibit 5. Additionally, Detective Hyitt testified Exhibit 6 was the four tablets he received from Reynolds on July 18, 2006 after the transaction between Reynolds and Fulk. Hyitt testified that this evidence was sent to BCII for investigation and that Exhibit 4 was the lab report for the sample that was contained in Exhibit 6.
 Failure to Request Separate Trials {¶ 37} Fulk also alleges that her trial counsel was ineffective for failing to request separate trials for each of the counts charged in the indictment. Specifically, Fulk alleges that having a single trial encompassing both counts was prejudicial because the jury could consider evidence of both of the incidents in reaching a verdict for any one offense, thus having her guilt turn on evidence that would not be admissible if each count was tried separately.
 {¶ 38} Our review of the record reveals that although the testimony presented to the jury covered the events occurring on July 18, 2006 and July 27, 2006, the evidence regarding each count was clearly part of an ongoing single investigation and course of dealing between this confidential informant and Fulk. Moreover, we note that the testimony presented by Detective Hyitt revealed that during the July 18, 2006 transaction the confidential informant did not remain on *Page 19 
his front porch in plain view of the officers conducting surveillance. Instead, the confidential informant went upstairs into his apartment and then came back down to the porch. Hyitt testified that this was contrary to the protocol set by the Sheriffs Department.
 {¶ 39} Based upon this testimony and the similar testimony of the other officer involved in the surveillance of the transactions, Fulk's counsel was able to successfully attack the credibility of the confidential informant regarding the July 18 transaction, resulting in an acquittal as to this charge. Fulk's counsel was also able to attack the confidential informant's credibility regarding the July 27 transaction.
 {¶ 40} Additionally, based on Fulk's counsel's decision to proceed to a single jury trial on both counts of the indictment, counsel may have reasonably believed that one trial would be the best strategy to try and persuade the jury to return a verdict of not guilty on both counts of the indictment at the same time. This choice of procedure does not necessarily reflect ineffective assistance of counsel and may be considered trial strategy. See State v. Carter and Strickland v.Washington, supra.
 {¶ 41} Finally, we note that the fact that the jury rendered a verdict of not guilty as to Count 1 and a verdict of guilty as to Count 2 make it highly probable *Page 20 
that the jury did not confuse the offenses and that the jury carefully considered all of the testimony and evidence presented before rendering their verdict.
 {¶ 42} Based on the foregoing, we conclude that the evidence in this case does not establish that Fulk's trial counsel provided ineffective assistance of counsel. In fact, we note that the record reflects Fulk's counsel's zealous and thorough representation of her interests throughout the duration of this case. Therefore, we find that the actions taken by Fulk's counsel do not fall below an objective standard of reasonable representation. Nor, in this case, did they create any reasonable probability of a different outcome. Accordingly, Fulk's first assignment of error is overruled.
 Assignment of Error No. 2 {¶ 43} In her second assignment of error, Fulk alleges that the evidence presented was insufficient to allow the jury to conclude that she was guilty of trafficking and therefore the jury's verdict was against the manifest weight of the evidence.
 {¶ 44} An appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. In reviewing whether the trial court judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the *Page 21 
conflicting testimony. Id. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Andrews 3rd Dist. No. 1-05-70, 2006-Ohio-3764 citingState v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717;Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541.
 {¶ 45} In making this determination, the Ohio Supreme Court has outlined eight factors for consideration, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness's testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary."State v. Apanovitch (1987), 33 Ohio St.3d 19, 23-24, 514 N.E.2d 394, citing State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, syllabus. Ultimately, however, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin,20 Ohio App.3d at 175, 485 N.E.2d 717.
 {¶ 46} In order to convict Fulk of Trafficking in Drugs in the present case, the State was required to show, beyond a reasonable doubt, that Fulk knowingly *Page 22 
sold or offered to sell a Schedule III, IV, or V controlled substance. See R.C. 2925.03(A)(1) and (C)(2)(a).
 {¶ 47} At trial, the State called Detective Hyitt of the Van Wert County Sheriffs Department as a witness. Hyitt testified that his office used James Reynolds as a confidential informant in the transactions at issue in the present case occurring on July 18, 2006 and July 27, 2006.
 {¶ 48} Hyitt first testified regarding the July 27, 2006 transaction and testified that on this date Reynolds was acting as a confidential informant in another case when he received a call from Fulk. Hyitt testified that prior to starting the case involving Fulk, Detective Paul Swander patted Reynolds down to search for drugs and did not find any. Hyitt testified that he then gave Reynolds $20.00 and instructed Reynolds to wait for Fulk. Hyitt testified that while taking notes on the situation, he observed Fulk's vehicle approaching Reynolds' house and observed Reynolds walk to Fulk's vehicle and talk to her through the passenger side door. Hyitt testified that he listened to the transaction, which lasted less than a minute. Hyitt testified that after Fulk left the area Reynolds handed over four tablets to Swander which were later determined to be Xanax, or Alprazolam.
 {¶ 49} Hyitt also testified regarding the July 18, 2006 transaction and testified that he searched Reynolds prior to this transaction and did not find any *Page 23 
controlled substances. Hyitt testified that he gave Reynolds money, wired him for sound, and that Reynolds went to his front porch. However, Hyitt testified that Reynolds did not stay on the porch and instead went upstairs into his apartment briefly and then came back down to the porch which was contrary to the protocol set by the Sheriff's Department. Hyitt testified that Fulk then came to Reynolds' house and that after she left, Reynolds handed him four tablets of Vicodin, or Hydrocodone.
 {¶ 50} The State also called Detective Swander as a witness. Swander testified that he was directly involved in the July 18 and July 27, 2006 transactions between Reynolds and Fulk. Swander testified that he took notes on July 18 and that he drove the surveillance van on July 27. Our review of the record reveals that Swander's testimony was substantially similar to the testimony provided by Hyitt. However, we note that Swander testified that although he observed both transactions, he did not see Fulk give Reynolds pills or drugs at either time.
 {¶ 51} Finally, the State called Reynolds as a witness. Reynolds testified that both transactions were set up over the phone, that Fulk would "stop down" and he would go out to her car and get the pills, and then would take them to Hyitt and Swander. Reynolds testified that he bought 4 tablets from Fulk on July 18 and July 27, 2006 and that he immediately turned the tablets over to the detectives. Additionally, Reynolds testified that he was searched by the detectives before and *Page 24 
after both transactions and that he wore a wire each time. Reynolds also testified that he had previous criminal convictions, including a conviction for forgery, and that he had previously used drugs.
 {¶ 52} Fulk then testified on her own behalf and testified that she had been prescribed Xanax after her son died on July 6, 2006. Fulk testified that she took all of the Xanax pills within two days and that there were no refills on the prescription. Fulk also testified that she had been prescribed Vicodin in March of 2006 for pain in her knees. She testified that she took two or three of the Vicodin pills but that they upset her stomach so she stopped taking them.
 {¶ 53} Fulk also testified that she knew Reynolds prior to the events occurring on July 18, 2006 as he had previously dated her granddaughter and used to be friends with her son. Fulk testified that she went to talk to Reynolds on July 18 because he owed her $40.00. Fulk testified that when she spoke with Reynolds on this date, he gave her $20.00 and she said they "will call that even." Fulk also testified that she did not have any Xanax or Vicodin with her on either July 18 or July 27, and that she never sold Reynolds any drugs.
 {¶ 54} The credibility of witnesses, including experts, is for the jury to decide. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. Credibility is always an issue, whether impeached or not, and it is for the fact finder to impartially determine if a witness is credible and the *Page 25 
amount of weight to be afforded to that particular witness' testimony.State v. Bayer (1995), 102 Ohio App.3d 172, 182, 656 N.E.2d 1314. The jury may believe or disbelieve any witness. State v. Viola (1947), 51 Ohio Law Abs. 577, 82 N.E.2d 306.
 {¶ 55} Based on the foregoing, we find that the testimony presented during trial, coupled with the fact that the jury did not convict Fulk on the first count of Trafficking in Drugs as it related to the July 18, 2006 transaction, make it highly probable that the jury carefully assessed the credibility of each witness and properly weighed and considered all of the testimony and evidence presented before rendering their verdict. Therefore, we cannot find that the jury's verdict was against the manifest weight of the evidence. Accordingly, Fulk's second assignment of error is overruled.
 Assignment of Error No. 3 {¶ 56} In her third assignment of error, Fulk alleges that the trial court erred when it imposed more than the minimum sentence. Specifically, Fulk alleges that the trial court failed to follow the purposes of felony sentencing and failed to follow the seriousness of the crime and recidivism factors set forth in R.C. 2929.12.
 {¶ 57} In reviewing sentencing decisions of a trial court, an appellate court conducts a meaningful review of the sentence decision.State v. Carter 11th Dist. *Page 26 
No. 2003-P-0007, 2004-Ohio-1181. "Meaningful review" means that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law. Carter at ¶ 44 citing State v. Comer (2003),99 Ohio St.3d 463, 793 N.E.2d 473; R.C. 2953.08.
 {¶ 58} Additionally, a court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing which are to protect the public from future crime by the offender and to punish the offender. R.C. 2929.11(A). To achieve those purposes, the court shall consider the need for incapacitating the offender, deterring the offender from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.Id.
 {¶ 59} As a preliminary matter, we note that Fulk committed the offense of Attempted Retaliation in Case No. CR-04-11-138 prior to the decisions of the Supreme Court of Ohio in State v. Foster (2006),109 Ohio St.3d 1, 2006-Ohio-856 and State v. Mathis (2006),109 Ohio St.3d 54, 2006-Ohio-855. However, we note that Fulk's third assignment of error also relates to her sentence on the community control violation related to this conviction, of which said violation and sentencing occurred after Foster and Mathis were decided. We also note that Fulk *Page 27 
committed the offense of Trafficking in Drugs in Case No. CR-06-12-225 and was convicted and sentenced on this offense after theFoster and Mathis decisions.
 {¶ 60} In Foster, the Supreme Court of Ohio addressed constitutional issues concerning felony sentencing and held that portions of Ohio's felony sentencing framework were unconstitutional and void, including R.C. 2929.14(B) requiring judicial findings that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crimes by the offender, and R.C. 2929.14(C) which requires judicial fact-finding for maximum prison terms. See Foster, 2006-Ohio-856 at ¶ 97, 103. Regarding new sentences and re-sentences, the Supreme Court of Ohio stated, "we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster at ¶ 100; Mathis, 2006-Ohio-855 at paragraph three of the syllabus and ¶ 37.
 {¶ 61} However, a trial court must still consider the overall purposes of sentencing as set forth in R.C. 2929.11, as well as the factors relating to the seriousness of the offense and recidivism of the offender under R.C. 2929.12, when sentencing an offender. State v.Smith, 3rd Dist. No. 2-06-37, 2007-Ohio-3129 at ¶ 26
citing Mathis, 2006-Ohio-855 at ¶ 38. But, under R.C. 2929.12, a *Page 28 
sentencing court is not required to use specific language regarding its consideration of the seriousness and recidivism factors. Id. citingState v. Sharp 10th Dist. No. 05AP-809, 2006-Ohio-3448;State v. Amett (2000), 88 Ohio St.3d 208; State v. Patterson
8th Dist. No. 84803, 2005-Ohio-2003. Further, there is no requirement in R.C. 2929.12 that the trial court state on the record that it has considered the statutory criteria or even discussed them.Id. citing State v. Polick (1995), 101 Ohio App.3d 428, 431; State v.Gant, 7th Dist. No. 04-MA-252, 2006-Ohio-1469.
 {¶ 62} In the present case, the trial court conducted Fulk's sentencing hearing pursuant to R.C. 2929.19, which provides, in relevant part, as follows:
 (A)(1) The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted of or pleaded guilty to a felony . . . At the hearing, the offender, the prosecuting attorney, the victim or the victim's representative . . . and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case. The court shall inform the offender of the . . . finding of the court and ask the offender whether the offender has anything to say as to why sentence should not be imposed upon the offender.
 {¶ 63} A review of the record in the present case demonstrates that the trial court followed the procedures set forth in R.C. 2929.19 and considered both R.C. 2929.11 and R.C. 2929.12 in sentencing Fulk. Furthermore, we find that Fulk's sentence was supported by the record. *Page 29 
 {¶ 64} Specifically, we note that at Fulk's sentencing hearing the trial court stated that it would consider the factors under 2929.12. The court also stated as follows:
 What weighs heavily in the court's consideration in both of these cases are the recidivism factors. Obviously in the 2006 case . . . at the time of committing that offense the Defendant was on community control in the 2004 case. That is an important factor with regard to showing recidivism is more likely than not. * * *
 The court is going to find in both cases the Defendant has not responded favorably to sanctions previously imposed and that is what weighs heavily in consideration of the sentencing on the 2006 case an obvious failure to respond favorably to the sanctions of the community control in the 2004 case . . . she is not being rehabilitated to a satisfactory degree. * * *
 . . . after considering all the factors, not only the guidance factors set forth in 2929.12, but also all the factors that the court was made aware of . . . the court is going to find that in both of these cases now prison is consistent with the purposes and principles of sentencing and that the Defendant is no long (sic) and is not in either case amenable to the continuation of community sanctions. The court finds that a combination of community control sanctions in both cases would be demeaning to the seriousness of her conduct and would be demeaning to the recidivism factors that show in her case that recidivism would be more likely.
(See Transcript of Community Control Violation Hearing and Sentencing Hearing May 21, 2007, pp. 12-14).
 {¶ 65} Additionally, we note that the trial court's May 23, 2007 Judgment Entry stated that it had "considered the record, oral statements, any victim impact statement and pre-sentence report prepared, as well as the principles and purposes *Page 30 
of sentencing under R.C. 2929.11, and the seriousness and recidivism factors relevant to the offense and the offender pursuant to R.C.2929.12 . . ." The trial court also found that Fulk had a history of criminal convictions, that she had not responded favorably to sanctions previously imposed for criminal convictions, and that she showed no genuine remorse for the offense. Accordingly, the trial court determined that "after considering the factors set forth in R.C. 2929.12, a prison term is consistent with the purposes and principles of sentencing . . . and the offender is not amenable to the available community control sanction."
 {¶ 66} Thus, although the trial court was not required to set forth its specific findings, nor was it required to specifically state that it considered each of the subsections of R.C. 2929.11, R.C. 2929.12, or R.C. 2929.13 pursuant to Foster, and Smith, supra, the record clearly evinces that the trial court considered the requisite factors of R.C.2929.12 in imposing Fulk's prison term. Therefore, we cannot clearly and convincingly find that the record does not support Fulk's sentence or that the sentence is otherwise contrary to law.
 {¶ 67} Finally, pursuant to R.C. 2929.14(A),
 . . . [i]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following: * * *
 (4) For a felony of the fourth degree, the prison term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months. *Page 31 
 (5) For a felony of the fifth degree, the prison term shall be six, seven, eight, nine, ten, eleven, or twelve months.
 {¶ 68} Accordingly, we note that Fulk could have been sentenced to prison terms of as little as six months for each of her felony convictions, or the maximum prison terms of 18 months and 12 months for each of her felony convictions. In this case, the trial court sentenced Fulk to prison terms of 12 months on each of her felony convictions, to be served concurrently.
 {¶ 69} Therefore, we find that the trial court properly considered the factors contained in R.C. 2929.11 and R.C. 2929.12 in sentencing Fulk and that her sentence is supported by the record. Accordingly, Fulk's third assignment of error is overruled.
 {¶ 70} Based on the foregoing, the May 23, 2007 Judgment Entries of the Van Wert County Court of Common Pleas are affirmed.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] Fulk's sentence for her conviction of Trafficking in Drugs was contained in trial court Case No. CR-06-12-225, which is Case No. 15-07-008 in the present appeal. Fulk's sentence for her violation of community control was contained in trial court Case No. CR-04-11-138, which is Case No. 15-07-009 in the present appeal. These two cases were consolidated for purposes of this appeal.
[2] We note that the court's date stamp on this document actually reads "April 31, 2007." However, since there are not 31 days in the month of April, we can only assume that the actual date of filing was May 1, 2007. *Page 1